## Crawford v. Wiedemann.

(Decided May 14, 1914.)

### Appeal from Campbell Circuit Court.

1. Partnership—Creation—Operation of Law—Contract—Intention.—
   While, strictly speaking, a partnership never arises by opera-
   tion of law, but is a question of contract and intention, yet
   where the parties enter into a contract which embraces every
   element necessary to constitute a partnership, the relation be-
   tween the parties will be that of partners.

2. Partnership—Promissory Note—Liability of Parties as Partners
   —Evidence.—Where two parties were liable on a promissory
   note, and one of the parties claimed that a partnership existed
   between them whereby the other party was liable on the note
   in a proportion greater than he was liable, evidence examined,
   and held to support the finding of the trial court that the note
   was not a partnership note, and that the parties were equally
   liable thereon.

JAMES C. WRIGHT and HAZELRIGG & HAZELRIGG for ap-
pellant.

DOLLE, TAYLOR & O'DONNELL and RAMSEY WASHING-
TON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

This action was originally brought by the German
National Bank of Newport, Kentucky, against Charles
Wiedemann and Leonard J. Crawford on a promissory
note for $15,000, dated July 15, 1909, and payable four
months from date, and guaranteed by Wiedemann and
Crawford. When the suit was filed, Wiedemann and
Crawford each filed an answer and cross-petition against
the other, Crawford alleging that there was a partner-
ship between him and Wiedemann, and that his liability
on the note was 29-23/70 per cent thereof, while Weide-
mann's liability on the note was 70-47/70 per cent.
Wiedemann denied that any partnership existed between
him and Crawford, or that the note sued on was a part-
nership note, and pleaded that they were liable on the
note in equal proportions. The bank obtained a judg-
ment against both defendants. Wiedemann paid the
judgment and took an assignment thereof from the bank.
Thereafter he caused an execution to issue against
Crawford for one-half the amount of the judgment and

costs. Crawford moved to quash the execution. The motion was sustained, and the execution quashed. Wiedemann appealed. This court held that before quashing the execution the court should have heard and determined the question of the liability of the parties as between themselves. The judgment was therefore reversed, and the cause remanded for proceedings consistent with the opinion. Wiedemann v. Crawford, 149 Ky., 202.

During the pendency of the appeal Crawford moved that the cause be referred to the master commissioner to hear proof and report on the issues joined. Wiedemann objected, but the motion was sustained. For some time nothing was done under the order of reference. After the evidence was heard and the case taken under submission by the master, the opinion of this court was rendered. On August 10, 1912, the master reported that no partnership existed between Crawford and Wiedemann, and that the liability of the parties on the note in question was in no wise affected by the alleged partnership. Thereafter Crawford filed exceptions to this report. The court, after reading the evidence, entered an order confirming the report, and adjudged that Crawford and Wiedemann were equally liable on the note. The cross-petitions of the two parties were dismissed without prejudice. From the judgment so entered, Crawford appeals.

It appears from the record that both Crawford and Wiedemann were stockholders in the Highlands Hotel Company, a corporation organized for the purpose of conducting a hotel in the District of Highlands, Campbell County. As early as June 25, 1906, the Highlands Hotel Company and certain stockholders executed to L. J. Crawford and Charles Wiedemann their promissory note for $7,500, negotiable and payable four months after date at the German National Bank at Newport. Attached to the note as collateral were certain shares of stock owned by the stockholders. This note was negotiated by the German National Bank. Subsequently an additional note for the same sum and by practically the same parties was also negotiated by the bank. For a while these two notes were renewed as separate notes. Subsequently they were incorporated in one note for $15,000. About that time Crawford and Wiedemann had acquired nearly all the stock of the corporation. Afterwards this $15,000 note was renewed by the Alta-

mont Hotel Company, and guaranteed by Crawford and Wiedemann, and that is the note sued on in this action.

The Highlands Hotel Company did not prosper, and Wiedemann, who was a large stockholder and creditor of the company, instituted proceedings for the appointment of a receiver and a sale of the property. On January 29, 1909, Crawford and Wiedemann entered into a contract whereby they agreed to purchase all the real estate, except the Shelley Arms property, of the Highlands Hotel Company, and all its personal property, at a figure not exceeding the claims (excepting the stock claims) against said hotel company, and that their interest and ownership in such purchase should be in proportion to the sum theretofore invested by them in the hotel enterprise, including both common and preferred stock and loans. Some time later, the real estate of the company was sold, and one Widrig, representing both Crawford and Wiedemann, became the purchaser. After the purchase of the Altamont Hotel, it was intended to form a corporation to take over the property. Crawford contended that the hotel should be conducted as a partnership, while Wiedemann declined to accede to this arrangement. Being unable to agree on this proposition, the parties proceeded to litigate their rights.

According to Crawford's evidence, when the notes for $7,500 each were originally executed, the stockholders put up certain stock as collateral, Mr. Wiedemann putting up two shares to his one. When the contract was entered into between him and Wiedemann to purchase the property, he stated to the bank that he and Wiedemann had large claims against the company for money loaned, and if they purchased the property they would want to continue the loan at $15,000. On these claims there was a dividend of about $4,500, which was first paid to the bank, and then assigned to them, and used in paying for the property in proportion to their respective interests of 29-23/70 per cent and 70-47/70 per cent. He never discussed the question of partnership with Mr. Wiedemann until the latter's return from Europe. He then said to Mr. Wiedemann: "Well, Mr. Wiedemann, you have a partnership now." Wiedemann said: "Then I will dissolve it." Crawford replied: "Very well, then, it is dissolved." Prior to April 1, 1909, he did not claim that any partnership existed between him and Wiedemann, unless it arose by operation of law out of the retention of the manager who was em-

ployed to conduct the hotel. There was no partnership in the ownership of the land. That was owned jointly in the proportions referred to. After they began to operate the hotel during the summer he paid $150 towards the expense of the manager. That was the only thing he contributed towards the expense of the hotel. Though the lands and buildings were not partnership property, and the furniture and fixtures of the hotel were purchased at the same time, the personal property, in his opinion, was partnership property. There was never any discussion between him and Mr. Wiedemann as to what interest he should have in the property, or what proportion of the losses he should bear. There was no discussion as to what he was to do as partner. He contributed the property, the use of the real estate, and the use of the personalty, which comprised all the furnishings and equipment of the hotel. This was under no arrangement, but simply by "pleasant brotherly acquiescence" in the operation of the hotel. In making payments to the master commissioner, none of it was partnership money. In executing the new note for $15,000, in lieu of the $15,000 note due by the Highlands Hotel Company, the partnership received only the old note for $15,000. There was no liability on the part of the partnership to pay the Highlands Hotel Company note for $15,000 prior to the execution of the note in this case. There was never any express agreement between him and Mr. Wiedemann as to what per cent each was to pay in the event of the dishonor of the note. He and Mr. Wiedemann always believed that the hotel company would pay the note, and that they would not be called on to pay it. In regard to the distribution of the $4,500 dividend, derived from the assets of the old Highlands Hotel Company, witness stated that its distribution as between him and Mr. Wiedemann in no way affected their liability on the note.

Wiedemann testified that when the original notes of $7,500 each were executed, the bank agreed to let the company have the money on his and Mr. Crawford's credit. The stock deposited as collateral was placed with the note merely for their protection. There was never any agreement between the signers of the note, or between him and Crawford as to what their respective liabilities on the note would be in event of any default. After he and Mr. Crawford had secured a greater part of the stock, the hotel company continued to lose money.

Finally he got tired of it, and it was suggested that receivership proceedings be instituted. When he and Crawford agreed to purchase the hotel they went to the bank, and the cashier stated that the bank would take care of the note for the new company. In purchasing the hotel, they retained the manager. Witness understood that the company was to be operated as a corporation. The hotel was run under the name of the Altamont Hotel Company. After witness returned from Europe, Crawford insisted that the hotel be conducted as a partnership. It had previously been understood that a corporation be formed. When Crawford suggested a partnership, he declined to be a party to it. After acquiring the stock in the Highlands Hotel Company, he and Crawford did agree that in advancing money to it, he should put up about two-thirds and Crawford one-third. It was not true that in borrowing money originally, stock was put up as collateral in proportion to their holdings as stockholders. When the hotel itself failed, the stock was of no value.

Clarence Wagner, Wiedemann's attorney in fact, testified that he invariably attended to the execution of the original notes for $7,500, and their subsequent renewal as separate notes and as one note. At no time was there ever any discussion as to the respective liability of the makers of the notes. At Mr. Crawford's suggestion, a resolution was passed by the Highlands Hotel Company indemnifying Crawford and Wiedemann against any loss by reason of their suretyship on the note. After the purchase of the hotel, the account was kept in the name of the Altamont Hotel Company. This name was suggested by Mr. Larkin, the cashier of the German National Bank. It was understood that a corporation was to be formed to take the property over. In the meantime the hotel was operated. In operating the hotel, it was not operated as a partnership. No mention was ever made of the word partnership. The dividend received from the assets of the old Highlands Hotel Company was never apportioned in any way. It was considered as being due Crawford and Wiedemann in equal sums. A check for the dividend, amounting to $4,589.25, was made payable to L. C. Widrig. Widrig endorsed it to Anderson, the master commissioner. The master commissioner paid it to the bank. Later the bank paid the same sum to Wiedemann. Instead of the sum being credited on the new note, the Altamont Hotel Company executed its

note for the entire $15,000. The dividend of $4,589.25 was not taken into consideration in apportioning the amount due either from Mr. Crawford or Mr. Wiedemann on account of the purchase of the property.

The question in this case is not whether Crawford and Wiedemann were partners as to third parties, but whether they were partners as between themselves. Crawford contends that as to the personal assets purchased along with the Highlands Hotel, and in the conduct of the hotel as the Altamont Hotel, there was a partnership which arose by operation of law. Strictly speaking, a partnership never arises by operation of law. It is a question of contract and intention, appearing from all the facts of the case. It may be true, however, that where the parties enter into a contract which embraces every element necessary to constitute a partnership, the relation between the parties will be that of partners, it matters not by what name the relation may be designated. Thus, if A and B engage in a joint business, each contributing his money, time and skill in certain proportions, under an agreement by which they are to share the profits and losses as profits and losses, a partnership between them necessarily exists. In such a case, however, the partnership grows out of the contract and the intention of the parties. In this case not only the real estate but the personal property was purchased under an agreement that it was to be owned in certain proportions. Crawford says that the question of partnership was never mentioned between him and Wiedemann. Wiedemann and Wagner testify to the same effect. Crawford admits that there was no partnership as to the realty. It is difficult to see upon what theory it can be said that there was a partnership as to the personalty and not as to the realty, when the personalty was bought under exactly the same arrangement as the realty. After the purchase of the hotel it was operated as a going concern. There was no agreement as to terms. A manager was employed. Mr. Crawford seems to have advanced $150 towards paying for the manager. Aside from this contribution towards the expenses, and the fact that he was a guest at the hotel, there are no facts from which it could be reasonably inferred that a partnership was intended. There was no discussion as to what each should do as a partner. There was no agreement as to how the hotel should be conducted; but it was conducted, in the language of Mr. Crawford, by "pleas-

ant brotherly acquiescence." There is nothing to show that the parties contemplated a co-ownership of the profits as such, or that the profits were actually divided as profits among them. Indeed, the elements necessary to constitute a partnership are altogether lacking. But even if there was a partnership in the conduct of the hotel, the note sued on is not an obligation growing out of its management after its purchase by Wiedemann and Crawford. The note in question is simply the renewal of the two old notes for $7,500 each which were the primary obligation of the Old Highlands Hotel Company, a corporation, and on which Wiedemann and Crawford were guarantors or sureties. The record fails to show any agreement between the parties at the time of the execution of the original notes, or of their subsequent renewals, with reference to their respective liability. Certainly the parties were not partners at that time, but were mere stockholders in the corporation. It may be true that on certain renewals Crawford and Wiedemann put up the stock of the corporation as collateral in the proportion of one to two. Doubtless this was done because that was the proportion in which they owned the stock. There being no agreement that their respective liabilities on the note were to be in that proportion, the mere fact that the stock was deposited as collateral in that proportion is not sufficient to authorize us to con-clude that the parties understood or intended that their liability should be fixed in proportion to the stock so deposited as collateral. Indeed, the only ground on which an unequal liability on the notes may be based is the fact of the inequality in the stock ownership. Such a circumstance is not of itself sufficient to overcome the legal presumption that an equal liability was intended. But it is insisted that the distribution of the dividend from the sale of the assets of the Highlands Hotel Company was made on the basis of the respective interests of the parties after the purchase in the receivership proceedings. At first Mr. Crawford made this contention. Afterwards he claimed that the division of this dividend had nothing to do with the case. Relying on this fact, he declined to go into a discussion of the figures. On the other hand, Wagner claims that no such distribution was made. The accounts between the parties are not before us. The record shows that the check was drawn by the George Wiedemann Brewing Company to Widrig, who purchased the property for Crawford and Wiedemann.

Widrig endorsed it to the master commissioner. The master commissioner paid it to the bank. The bank returned the money to Wiedemann. What was thereafter done does not appear. On the evidence before us, we cannot say with any reasonable certainty how, if ever, the dividend was apportioned between the parties. That being true, its apportionment throws no light on the case. As we see the case, the $15,000 note sued on represents simply the old debt of the Highlands Hotel Company, upon which Crawford and Wiedemann were jointly liable. If prior to the purchase of the hotel property by them the bank had demanded payment, they would have been liable in equal proportions for any balance due after crediting the note with any dividend arising out of the sale of the assets of the hotel company. Instead of discharging the note at that time, the bank permitted the parties to renew the note in the name of the Altamont Hotel Company, with the understanding that they were to continue thereon as guarantors. In the absence of any agreement to the contrary, or facts from which it could be reasonably inferred that the parties otherwise intended, their liability on the note as thus renewed continued the same as on the note in renewal of which it was given, and was not affected by the difference between their holdings in the property purchased, or the manner in which the hotel was conducted. It not appearing that the note was a partnership note, or that the parties ever agreed, understood or intended that their liabilities thereon should be in proportion to their respective holdings in the hotel property, the trial court did not err in adjudging that they were equally liable on the note.

Judgment affirmed.