# Guthrie et al. v. Foster et al.

(Decided Oct. 2, 1934.)

(As Modified on Denial of Rehearing Dec. 21, 1934.)

754

WHEELER, WHEELER & SHELBOURNE and C. C. GRASS-
HAM for appellants.

NUNN & WALLER and JAS. K. RUTLAND, Jr., for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming in part and reversing in part.

The main question presented on this appeal is the correctness or incorrectness of the judgment from which the appeal is taken, finding the existence of a partnership between R. R. Guthrie and John J. Foster, deceased, at the date of the death of the latter, on January 26, 1931.

R. R. Guthrie, J. H. Switzer, and B. A. Staten argue that the evidence as contained in the record falls far short of establishing the essential elements of a partnership between Guthrie and Foster.

The applicable principles of law controlling the case are not disputed by the parties. It is their application to the facts that is strenuously contested. The applicable principles presented are: "A partnership, as between the parties themselves, does not arise by operation of law, but is created only by contract and the intention of the parties." Crawford v. Wiedemann, 159 Ky. 18, 166 S. W. 595. "Strictly speaking, a partnership never arises by operation of law. It is a question of contract and intention, appearing from all the facts of the case." Id. "It is hornbook law that a partnership relation is founded upon a voluntary contract wherein the minds of the parties meet upon terms, and contemplates the sharing of profits and the express or implied agreement to bear losses." Frank v. Thompson, 207 Ky. 335, 269 S. W. 295, 296. "A partnership is a status arising out of a contract entered into by two or more persons, whereby they agree to share as common owners the profits of a business carried on by all or any of them on behalf of all of them." Shumaker on Partnership (2d Ed.) p. 2. "Whether partnership was created by agreement whereby money was advanced for use in business depends on terms of agreement, and not on name given to transaction or to parties." Ed·

wards et al. v. Johnson, 219 Ky. 113, 292 S. W. 750. "Our law has always treated the partnership relation as founded in voluntary contract. It does not surprise parties into a partnership against their will, although it does not require an express agreement between them, nor is it bound by their statements of intention in associating themselves together for business transactions. It will regard their conduct rather than their language in determining whether their voluntary association in a business enterprise amounts to a partnership or not." 30 Cyc. 352; Stewart v. Stovall, 191 Ky. 508, 230 S. W. 929.

Also: "If there is neither a community of interest in the property nor a community of interest in the profit, the association is not a partnership." 20 R. C. L. 831. "If the terms of the contract existing between the parties do not constitute a partnership none will be declared, even though the parties, in words, call the arrangement one." 20 R. C. L. 832. "The question of the effect of holding out as partners arises only in dealing with third persons, and cannot be raised between the parties themselves, for everyone is presumed to know who are his associates in business. Persons may, therefore, be made liable as partners as far as third persons are concerned, by assertions, admissions and acts tending to show that they are such, although such evidence might be insufficient to prove a partnership as between the parties themselves." 20 R. C. L. 1067, 1068.

It is contended by Guthrie, Switzer, and Staten that, when the evidence herein is measured by these principles, they are entitled to a reversal. The Foster heirs contend the contrary. The evidence is too voluminous to be reproduced in this opinion.

Guthrie, Switzer, and Staten summarize it thus:

"It was admitted in the answer and shown by the testimony of several witnesses that while Guthrie represented that Foster was a partner, he was, in fact, an employee. There was abundant proof of statements made by Foster indicating that this was not true. There is the undisputed proof of a large number of witnesses as to statements of Foster, and a course of dealing, indicating that Foster was an employee and not a partner. Many of these witnesses are still in the employ of E. Guthrie Company. Many of them are not. Their testimony as to statements of Foster and the course of dealing

in the store, as to bookkeeping entries, daily reports to Guthrie, withdrawals of funds and merchandise by Guthrie, purchase of merchandise by Foster, and other matters showing the true relationship of the parties is absolutely inconsistent with the existence of a partnership. The testimony of these witnesses is not disputed unless the writings referred to contradict them. Indeed, if a partnership existed, and if Foster had any interest in the retail business known as 'E. Guthrie Company' the testimony introduced by and on behalf of the defendants must be an elaborate structure of deliberate perjury. Moreover, the testimony of these witnesses as to accounts, records, withdrawals of merchandise, etc., is supported by the records themselves. It is shown that the expense incurred by Foster on account of the additional income tax which he was wrongfully required to pay was repaid to him by the store. We submit that the withdrawals by Guthrie, particularly his withdrawals on account of the Guthrie Building and the property in the rear of it, indicate conclusively that the business belonged to him and that he used it and controlled it as his own. It is not disputed that a salary was paid to Foster and none to Guthrie, though Guthrie furnished all the capital. This arrangement is certainly inconsistent with a partnership. * * * This undisputed testimony, we submit, overwhelmingly offsets any inference that may be drawn and any insinuations that may be made, based upon the written statements, tax returns and allegations in collection suits.''

With their view of the evidence in mind we shall confine ourselves to a consideration of so much of it as in our judgment overcomes that in behalf of Guthrie and all reasonable inferences deducible therefrom, and also sustains the judgment of the chancellor.

It is admitted that income tax reports which were made by R. R. Guthrie and John J. Foster for the E. Guthrie Company to the federal government, beginning with the year 1924 to the death of John J. Foster, show that R. R. Guthrie and John J. Foster were partners, the former owning nine-tenths and the latter one-tenth of the assets of the E. Guthrie Company.

On the 24th day of November, 1927, Guthrie and

Foster signed and acknowledged a declaration of ownership of E. Guthrie Company authorized by section 199b-2, Kentucky Statutes, and caused the same to be filed in the office of the county clerk.

On the 8th day of February, 1930, R. R. Guthrie verified a petition filed in the McCracken circuit court in the action of ''R. R. Guthrie and John J. Foster, trading and doing business as partners under the firm name and style of E. Guthrie Company, Plaintiff, vs. Robert Summers, Defendant.'' This action was on an account in favor of E. Guthrie Company against Robert Summers, for merchandise sold and delivered by E. Guthrie Company to him ''between May 1st, 1925 and December 1st, 1925.''

''The plaintiffs, R. R. Guthrie and John J. Foster, state that they are and were at all times hereinafter mentioned trading and doing business as partners in the operation of a department store in the city of Paducah, Kentucky.''

To this petition is attached an affidavit reading:

''Affiant, R. R. Guthrie, states that he is one of the plaintiffs in the foregoing petition and that the statements contained in said petition are true. R. R. Guthrie.''

It was subscribed and sworn to on the 19th day of July, 1926, by R. R. Guthrie before Clarence Bradley, notary public, McCracken county.

A petition was filed in the McCracken circuit court, entitled ''R. R. Guthrie and John J. Foster, trading and doing business under the firm name and style of E. Guthrie Company, Plaintiffs, against Lelia Zay Jackson Singery, etc., Defendants.''

In the petition a recovery was sought on an account of $272.16 for merchandise sold and delivered by E. Guthrie Company between the 11th day of February and the 2d day of July, 1928, to the defendants. To this petition is an affidavit reading:

''John J. Foster states that he is one of the plaintiffs in the foregoing petition in equity and the statements contained in it are true. John J. Foster.''

It was subscribed and sworn to by Foster on the 15th day of August, 1930, before L. C. Trevathan, deputy circuit court clerk. The first sentence in the above petition reads:

"Plaintiffs, R. R. Guthrie and John J. Foster, state they are and were at all times hereinafter mentioned trading and doing business as partners at Paducah, Kentucky, under the firm name and style of E. Guthrie Company."

Another petition was file in the McCracken circuit court styled as above against The Mode Boot Shop, Incorporated, and others. In this petition the plaintiffs sought to enjoin The Mode Boot Shop, Incorporated, and its employees and servants from using the name of E. Guthrie Company in advertising matter in any way or manner whatsoever. The affidavit to this petition reads:

"R. R. Guthrie, affiant, states that he is one of the plaintiffs in the foregoing suit, and the statements contained in the foregoing petition in equity are true. R R. Guthrie."

It was subscribed and sworn by R. R. Guthrie the 25th day of June, 1926, before Clarence Bradley, notary public, McCracken county. The first sentence in it reads:

"The plaintiffs, R. R. Guthrie and John J. Foster, state that they are and were at all times hereinafter mentioned trading and doing business as partners under the firm name and style of E. Guthrie Company, operating and conducting a department store in the city of Paducah, Kentucky."

same plaintiffs filed in the McCracken circuit court a petition against Mrs. Jessie Troop on April 2, 1926, to which this affidavit was attached:

"Affiant, John J. Foster, says that he is one of the partners trading and doing business as partners at Paducah, Kentucky, under the firm name and style of E. Guthrie Company, and the allegations of the foregoing petition are true. John J. Foster."

It was subscribed and sworn to by him on the 27th day of April, 1926, before Rose Lehrer, notary public, McCracken county. Again the firm filed a petition in the McCracken quarterly court against "John Tranthon, Defendant." The first sentence in it reads:

"The plaintiffs, R. R. Guthrie and John J. Foster, state that they are and were at all times herein-

after mentioned trading and doing business as partners at Paducah, Kentucky under the firm name and style of E. Guthrie Company.''

The affidavit to it reads:

''John J. Foster states that he is one of the plaintiffs in the foregoing petition and the statements contained in the said petition are true. John J. Foster.''

It was subscribed and sworn to by him on the 10th day of July, 1922, before L. C. Trevathan, deputy circuit court clerk.

A petition was filed in the McCracken circuit court by the same firm against James Sheehan. The opening sentence in it is in these words:

''Plaintiffs, R. R. Guthrie and John J. Foster, state that they are partners trading and doing business as a department store under the firm name and style of E. Guthrie Company.''

This action was to enforce a mortgage executed and delivered to E. Guthrie Company on the 16th day of February, 1923, to satisfy a debt of $285 evidenced by a note payable in installments. The affidavit to it reads:

''Affiant, R. R. Guthrie, states that he is one of the plaintiffs in the foregoing petition in equity and that the statements contained in the foregoing petition in equity are true. R. R. Guthrie.''

It was subscribed and sworn to by R. R. Guthrie on the 19th day of May, 1923, before Clarence Bradley, notary public, McCracken county.

Petitions in other actions were filed by R. R. Guthrie and John J. Foster, trading and doing business in the firm name and style of E. Guthrie Company, in the McCracken circuit and quarterly court against other defendants without being verified by either Foster or Guthrie.

For a period of ten years, or more, next prior to the death of Foster, E. Guthrie Company carried a $20,000 policy on the life of John J. Foster in the Metropolitan Life Insurance Company, insuring the life of Foster for the benefit of E. Guthrie Company. The premiums thereon were paid by E. Guthrie Company. After Foster's death, $20,179.38 was collected on it and deposited to the credit of E. Guthrie Company. The

existence of this large policy on the life of Foster for the use of the company signifies that the relation of Foster to the company was more than that of a mere employee. Reports to R. G. Dun & Co. from time to time show that R. R. Guthrie and John J. Foster were partners and the owners of the E. Guthrie Company.

Explanatory of the declaration of the ownership of E. Guthrie Company, signed and acknowledged, by them, and lodged with the county clerk, Guthrie's language is:

"I did it, because of a conversation I had with Mr. Hughes of Wheeler and Hughes. They were handling a suit in which we were trying to oust a man who leased our shoe department. Mr. Hughes was in the office and when I told him I was going away, he said, 'by the way, are you incorporated?' I said 'no, we're not.' He said 'well, if this suit comes up in a big court you will have to file a statement or be there in person because you are doing business as an individual.' I said, 'I am doing business as an individual, but I want it arranged so John can handle the matter while I am away.' And he said, 'you and John are so close and you have got to have something at the court as a matter of record a partnership agreement or something,' and I said 'it don't make any difference to me, we're like brothers anyhow.' Hughes prepared this partnership thing and we had it filed. After that we filed suit against Rosenberg and others and succeeded in ousting them out of our shoe department."

The declaration of ownership is dated November 24, 1927. It should be observed that at the time it was dated, and on the date of the conversation, Guthrie details in explanation of the signing, acknowledging, and lodging the same in the county clerk's office, the income tax returns showing he and Foster were partners bear dates commencing in 1924. Guthrie verified the petition of "R. R. Guthrie and John J. Foster trading and doing business as partners," etc., against The Mode Boot Shop and Rosenberg on the 25th day of June, 1926, or more than a year prior to the date of the declaration of ownership. It must further be observed that the date of the signing and acknowledging this declaration was more than one year after Foster had verified the petition against Jessie Troop. It is not unfair

to say that Guthrie's explanation of the reason for signing, acknowledging the declaration, conflicts with allegations of the many petitions verified by both him and Foster, the dates thereof, and also the dates and the statements in the income tax reports.

The record discloses Mr. Hughes, who Guthrie claims advised him of the necessity of the declaration of the ownership of E. Guthrie Company, was an able, distinguished, active, practicing lawyer, with years of experience, and it is fair to him to assume that he had actual knowledge of the provisions of the Civil Code of Practice and knew that, in the absence from the county of Guthrie, his agent or attorney was thereby authorized to verify any pleading or make an affidavit for all purposes required or authorized by it, and it was entirely unnecessary to accomplish such purpose for Guthrie and Foster to sign, acknowledge, and lodge with the county clerk a declaration of ownership under section 199b-2, Kentucky Statutes. Guthrie's explanation of the reason for the existence of this declaration convicts Mr. Hughes of a lack of common information of the existence of familiar provisions of the Code of Practice. See sections 58, 117, and 550, Civil Code of Practice.

The Foster heirs sought to examine as if on a cross-examination R. R. Guthrie, as authorized by subsection 8, sec. 606, Civil Code of Practice. He was asked to state the business relations of himself and John J. Foster at the time of the latter's death. Through his counsel an objection to the question was made on the ground ''he [Guthrie] may not testify concerning statements of transactions with, or acts done or admitted to be done by John J. Foster, because John J. Foster is now dead.'' And, though the question in a different form was often repeated, on the advice of his counsel, he declined to answer it. He was thus afforded the privilege and opportunity to avail himself of his own testimony which he declined to accept; consequently the court must determine the decisive questions herein without the enlightening and helpful benefit of his testimony. His refusal to answer the question and thereby impart to the court his personal knowledge of the decisive facts is a circumstance from which it is allowed to be inferred that, if he had answered the question, his answer would have established a partnership between him and Foster. Star Mills v. Bailey, 140 Ky. 194, 130 S. W. 1077, 140 Am. St. Rep. 370; Rice v. Rice, 243 Ky.

837, 50 S. W. (2d) 26. It is an established rule that, if a party is incompetent as a witness "for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done" by one who is dead when the testimony is offered to be given, and is called as a witness by the adverse party and he testifies in behalf of the party calling him, his incompetency is thereby removed, and he may thereafter testify as to those matters concerning which he was interrogated. Arnold et al. v. Cocanaugher et al., 170 Ky. 712, 186 S. W. 488; McCoy v. Ferguson, 249 Ky. 334, 60 S. W. (2d) 931, 90 A. L. R. 891; Black v. Noel's Adm'x, 240 Ky. 209, 41 S. W. (2d) 1100. The calling of R. R. Guthrie as on cross-examination and affording him an opportunity to avail himself of his own testimony was indeed greatly to his benefit, and his refusal to answer the question and thus furnish the facts to the court weighs heavily against the insistence no partnership existed between him and John J. Foster. The verified pleadings filed by him and Foster in the courts of their county, their sworn reports of the income tax of E. Guthrie Company, and their deliberate declaration of ownership lodged in the county clerk's office, considered in connection with the fact Guthrie was afforded an opportunity to testify in his own behalf concerning the partnership between him and Foster, and repeatedly declined to do so, though on the advice of counsel, are sufficient to establish between them a partnership within the principles of law contended for by Guthrie, Switzer, and Staten, notwithstanding the contrary evidence in their behalf. Without giving weight to the judgment of the chancellor, it is our conclusion that his finding that there was a partnership between Guthrie and Foster at the death of Foster, the former owning nine-tenths and the latter one-tenth of the assets of E. Guthrie Company, is authorized and supported by the whole of the evidence. Any other conclusion inevitably convicts both Guthrie and Foster of falsely reporting themselves partners to the federal government to escape a "widow's mite" of the income tax of E. Guthrie Company and of unnecessarily swearing in their pleadings to the circuit and quarterly court of their county they were partners, when in truth they were not.

On his finding that a partnership existed between Guthrie and Foster, the chancellor proceeded to ascertain and determine the assets and liabilities of E. Guth-

rie Company at the death of Foster. In doing so he used a statement of assets and liabilities of January 1, 1931, as prepared by E. Guthrie Company. He eliminated $36,332.68, the depreciation of fixtures as listed in this statement. Inasmuch as the fixtures were on hand at the death of Foster, and the $36,332.68 depreciation thereof was arrived at by mere bookkeeping solely for income tax purposes, it is scarcely debatable the court properly eliminated this item. Guthrie, Switzer, and Staten assert that the capital stock of $20,000 was contributed entirely by Guthrie. Except for the books of E. Guthrie Company, there is no showing as to how or when Guthrie and Foster contributed their portions of, or adjusted between themselves their contributions to, the capital stock. It is apparent that, if Guthrie had answered the question propounded to him on cross-examination, if Foster contributed no part of the capital, or if they had or had not adjusted the same between themselves, his knowledge thereof would afford intelligence as to their contributions to the capital, but his declining to answer it has deprived the court of the benefit of his information appertaining to this and other questions now presented. He and his codefendants are therefore in no position to complain against the act of the court utilizing the facts and circumstances shown by the whole of the evidence bearing on this and other questions which were determined by the chancellor, and now presented to this court for review.

In the absence of evidence to the contrary, when a partnership is admitted or satisfactorily established, it is a presumption of law that its members are equal partners and that their respective contribution to the captial stock had been fairly and properly adjusted between them; but the income tax reports showing Guthrie was the owner of nine-tenths and Foster of one-tenth of the assets of E. Guthries Company are sufficient to overcome the presumption that they were equal partners and to justify the chancellor's finding that they were the owners of the assets of E. Guthrie Company in the proportion set forth in their income tax reports.

It is true that Guthrie was later called as a witness in his own behalf and testified he was "the sole and exclusive owner of the business of E. Guthrie Company." This statement is no more than his conclusion, and sheds no light on the partnership relations of him-

self and Foster while engaged in business under the name and style of E. Guthrie Company.

During the period of the partnership, Foster was paid a salary by E. Guthrie Company. His purchases were charged to him and paid for in cash, monthly. A salary was credited to Guthrie, and he was permitted to withdraw, at will, cash, and the same and his purchases of merchandise were charged on his account. The Guthrie Investment Company withdrew cash and purchased merchandise in its name which were charged to it on the books of E. Guthrie Company. The accounts of Guthrie, and the Guthrie Investment Company, or Guthrie building, from 1926 to 1931, were $6,416.64, the overdraft of Guthrie, and $32,049.49, the account of the Guthrie Investment Company or the Guthrie building.

There is no good reason appearing in the record why the $38,067.13, the sum of the overdraft of Guthrie and the charge against the Guthrie Investment Company, or the Guthrie building, should not be treated as assets of E. Guthrie Company. We have been unable to find in the record any evidence of Guthrie's right to charge off either the overdraft of R. R. Guthrie or the account of the Guthrie Investment Company, or Guthrie building; nor do we find any evidence of any settlement between Foster and Guthrie in reference to either of these items. The correctness of the amount of these items is neither contradicted nor denied. Only the propriety of treating them as assets of E. Guthrie Company is controverted and debated. It is our conclusion these items should be treated as assets of E. Guthrie Company, on hand at the death of Foster. The judgment porperly charged E. Guthrie Company with the $20,179.38 collected on the policy of insurance on the life of John J. Foster. A controversy is made in the briefs as to whether the statement of the assets and liabilities of E. Guthrie Company of date January 1, 1931, or the statement of March 17, 1931, should be used as the basis of the judgment. They conflict as to the value of the fixtures. So far as it is shown by the record, the fixtures embraced by them are identical, except as to their value. Since the case must be reversed on other grounds, we have arrived at the conclusion, on the return of the case to the circuit court, the parties should be permitted to take further evidence as to the value of the fixtures on hand at the death of Foster, if

they desire to do so, and the court may then determine and fix their value.

It is apparent that we concur in the judgment of the chancellor, except as to the value of the fixtures, and its failure to charge as assets the overdraft of Guthrie of $6,416.46 and the account of the Guthrie Investment Company, or the Guthrie building, of $32,-049.49, aggregating $38,466.13.

On the return of the case if Guthrie's salary was not deducted from the amounts charged off under the above items the same should yet be deducted.

Wherefore the judgment is affirmed on the original and reversed on the cross-appeal, for proceedings consistent herewith.