JOLIN, Respondent, v. OSTER, Appellant.*

*No. 24. Argued May 1, 1972.—Decided June 30, 1972.*
(Also reported in 198 N. W. 2d 639.)

* Motion for rehearing denied, with costs, on September 6, 1972.

202

For the appellant there were briefs by *Ray T. Mc-Cann,* and oral argument by *Ray T. McCann* and *John T. McCann,* both of Milwaukee.

For the respondent there was a brief by *Whyte, Hirschboeck, Minahan, Harding & Harland, S. C.,* and *Kersten & McKinnon,* attorneys, and *Victor M. Harding, George P. Kersten,* and *Anthony W. Asmuth, III,* of counsel, all of Milwaukee, and oral argument by *Victor M. Harding* and *George P. Kersten.*

WILKIE, J.   Although a number of new issues are presented on this appeal, much of appellant's grievance is with this court's earlier determination in the first appeal to the effect that a joint adventure can survive incorporation. Since that decision this court reaffirmed this proposition in *McDonald v. McDonald.*[3]   We do not intend on this appeal to deal *in extenso* with these arguments which constitute an attempt to reargue the issues decided in the first case.   We will devote this opinion for the most part to considering issues advanced by appellant as to errors that would require a reversal of the trial court's judgment as obtained by the respondent here.

Appellant raises the following issues on this appeal:

1.   Was this litigation properly tried as an action at law as opposed to an action in equity?

2.   Could the relationship between the parties constitute a joint adventure?

3.   Did the cross-examination of appellant violate the parol evidence rule?

4.   Did the court properly instruct the jury about respondent's alleged breach of contract?

5.   Does the judgment allow the respondent to improperly "pierce the corporate veil" to obtain damages from appellant?

[3] (1972), 53 Wis. 2d 371, 192 N. W. 2d 903.

6. Was the award of damages proper?
7. Were other errors made by the trial court?

*Nature of the proceedings.*

While appellant argues most vigorously that this action was improperly tried as an action at law, the prejudice which attaches to such an alleged error is not obvious. Although appellant contends that the action should not have been tried to a jury, it is clear that even in an action in equity the court may, on the motion of a party or on its own motion, submit questions of fact to an advisory jury.[4] Inasmuch as the court in this case approved the jury's determination, it would appear that the submission of the case to a jury would be harmless error, if it was error.

Appellant further argues that to allow this action to lie at law would allow the respondent both a legal and equitable remedy. While it might well be true that respondent has an action *either* at law *or* in equity, once the plaintiff has elected his remedy, he is bound thereby and could not bring an action in equity after proceeding at law.[5]

In his reply brief appellant contends that he was prejudiced because only equity has cognizance of the issues in this case. Such an argument assumes the validity of its conclusion. Quite obviously if this court decides that an action at law is proper, then appellant

[4] *Dombrowski v. Tomasino* (1965), 27 Wis. 2d 378, 385, 386, 134 N. W. 2d 420.

[5] 28 C. J. S., *Election of Remedies*, p. 1105, sec. 32. It should here be noted that the litigation in *Campfire Land Co. Inc. v. Jolin*, post, p. 229, 198 N. W. 2d 593, is not a relitigation of the same issues involved here. As is noted in the *Campfire* opinion, announced today, this litigation involves the joint venture entity, while the *Campfire* suit involves the corporate entity. The two actions are not duplicitous.

is simply wrong in his contention. It is immaterial whether the action is considered "legal" or "equitable" if the court decides that the action was properly brought.

Assuming that this is an action at law and that appellant has shown some prejudice in such proceedings, we conclude that trying the case in this manner was not error.

The problem here is one of semantics or characterization. The complaint in this case characterizes the cause of action as one for the breach of a fiduciary obligation, and this allows appellant to conclude that this case "has been the only case found in Anglo-American Jurisprudence which holds, implicitly or otherwise, that an action for breach of fiduciary duties is a legal action." While it is true that in the first appeal this court remanded the case with directions to submit the case to a jury, the issue of whether this is a legal or equitable action was not dealt with by the court in its opinion and, therefore, is not to be considered authority to support this procedure.[6] It is apparent, however, that appellant's entire argument is directed to the form and not the substance of the remedy sought by respondent. Rowley on *Partnership* states: [7]

"The two basic forms of actions between joint adventurers reflect the dual nature of the relationship of joint adventure—a contractual relationship and a legal relationship similar to partnerships and imposing on its members the duties and obligations of fiduciaries. Viewed as a contractual relationship, a wrong by one. of the parties subjects him to an action at law for damages. Viewed as a relationship of fiduciaries, a joint adventurer's basic remedy is an action for an accounting in equity."

Thus, if one characterizes the action as one for breach of fiduciary duty it is an equitable action, while if con-

---

[6] The issue was raised, however, on the motion for rehearing, but the court denied the motion for rehearing without opinion.

[7] 2 Rowley, *Partnership* (2d ed.), p. 520, sec. 52.45.

sidered a contract action it would be a legal action. In the end the result is the same—the same relief is available.

The problem of how one characterizes an action between joint adventurers is seen in this court's opinion in *Sander v. Newman.*[8] In that case a group of partners in a joint adventure brought suit against other partners for an accounting. Despite the fact that the plaintiffs had characterized their cause of action as equitable, the court made the following statement:[9]

". . . Since the four defendants who are alleged to have received a secret profit out of the deal were fiduciaries in relation to all the other subscribers, they became responsible in damages to such other subscribers for the alleged fraudulent concealment and deceit. Viewing the complaint in the light of its allegations, it in substance and effect sets forth a claim, as the circuit court held, '. . . to recover from the four alleged conspirators the amount of secret profits which it alleged they obtained by fraud and deceit, whereby each of the plaintiffs suffered a wrong and proportionately were deprived of moneys to which they were entitled.' . . .

"We think the facts as pleaded, and which must be assumed to be true on demurrer, constitute a cause of action in favor of the plaintiffs to recover any damages they sustained as the result of the alleged fraud by the four conspiring defendants in collecting secret profits and appropriating them to their own use and benefit. Such a claim was clearly enforceable in a legal action, . . ."

While appellant points out that this case was disposed of on other grounds, the validity of the assertions is supported by cases from other jurisdictions.[10]

Thus this type of case could be characterized as an action in equity for the breach of fiduciary obligations, or an action at law to recover for breach of contract or

---

[8] (1921), 174 Wis. 321, 181 N. W. 822.

[9] *Id.* at pages 329, 330.

[10] Rowley, *supra*, footnote 7, at page 524, sec. 52.47.

for fraud. Appellant's entire argument proceeds on the narrow basis of nomenclature, not substance. By viewing the action as one for the breach of a fiduciary obligation appellant misses the entire purpose of the action. While it might be asserted that respondent chose to delineate the cause of action as one for the breach of a fiduciary obligation, it must be remembered that this claim was part of a complaint which raised a contractual and fraud claim too. Thus to differentiate this claim, it was phrased in terms of fiduciary relations. It is the intent of this cause of action to recover damages for Oster's fraudulent activity under the agreement. Such a claim may be characterized as either equitable or legal.

That is not to say that an action between partners in a joint adventure can be brought as either an equitable or legal action under all circumstances. The usual rule applied is that an action at law may be brought in situations when the court can accurately ascertain damages without a full accounting.[11] While appellant levels several attacks upon the award of damages, it is important to note that he never requested an accounting, nor has he asserted in this court that an accounting was necessary to establish the damages to respondent. On the other hand, appellant does assert that an accounting should have been taken to determine the damages to the corporation. That is part of appellant's misconception of the damages awarded Jolin, as will be discussed below. As far as the damages to Jolin go, appellant argues that they were not properly computed, but it is clear that the evidence produced at trial—and it was

[11] *Wollard v. Radl* (N. Y. City Ct. 1952), 112 N. Y. Supp. 2d 572; *Iron Etc. Co. v. American Milling Etc. Co.* (1931), 115 Cal. App. 238, 1 Pac. 2d 1008; *Strong v. Crancer* (1934), 335 Mo. 1209, 76 S. W. 2d 383; Taubman, *What Constitutes a Joint Venture*, 41 Cornell Law Quarterly (1956), 640, 649.

copious—was sufficient to allow the jury to compute the damages to Jolin without an accounting.[12]

In conclusion, therefore, the determination of whether or not one partner may sue another in an action at law is not to be determined by the label affixed to the remedy, but rather to a factual consideration of whether the court could ascertain the damages without an accounting. Despite all of appellant's arguments to the contrary, this action was properly tried as an action at law to a jury.

### Was there a joint venture?

### Jury instruction.

The court gave the jury the following instruction on whether the business association between the parties was a joint venture:

"Question 1 of the special verdict reads: 'Question No. 1. Did Jolin and Oster enter into a joint venture?' The burden of proof as to Question 1 rests upon the plaintiff. Like a partnership, a joint venture is an association of two or more persons to carry on a business enterprise or commercial transaction for profit. It makes no difference whether the association is for a long or a short period. Likewise, it makes no difference whether the association is called a partnership or a joint venture, since the obligations of the parties toward one another are substantially the same. . . .

". . . The parties to a joint venture may, if they wish, operate the joint venture under a corporation formed

[12] *Blakely v. Smock* (1897), 96 Wis. 611, 71 N. W. 1052, relied upon by appellant is not to the contrary. In *Blakely* one of the partners died and the other partner paid the deceased partner's obligations for the firm's debts. This court held that in such a situation the surviving partner could not recover from the estate of his partner until there was an accounting to determine the assets of the partnership. The language cited in appellant's brief is taken out of context.

for the purpose of carrying on the business of a joint venture. The mere fact that Campfire Land Company, Inc., operated the business of the joint venture does not spell the end of the joint venture. The obligations of the parties to the joint venture, one to the other, remain the same even though they chose to operate the joint venture through the vehicle of a corporation, which in this case was Campfire Land Company, Inc. It is undisputed in this case that on the same day which the parties signed the agreement of November 17, 1961, they held their initial corporate meetings as Campfire Land Company, Inc., and the articles of incorporation were filed prior to that date. It is also undisputed that both Jolin and Oster now consider the agreement of November 17, 1961, to be still in effect. Therefore in considering Question 1 you should consider that the existence of Campfire Land Company, Inc., or the operation of the joint venture business through the corporate vehicle of Campfire Land Company, Inc., does not put an end to the joint venture.

"If you find that the parties to the agreement of November 17, 1961, intended merely to form a corporation, and intended that upon formation of the corporation the agreement of November 17, 1931, would be satisfied, and thus no longer in effect, nor a source of obligations to one another, then and then only should you find that there was no joint venture. If, however, you find that the parties to that agreement intended that the agreement and the obligations under it were to continue into effect after the formation of the corporation, Campfire Land Company, Inc., and during the conduct of the business known as Campfire Land Company, Inc., then you should find that there was a joint venture."

Appellant's first argument in relation to this instruction is that the court instructed the jury that the relationship between the parties was a joint venture as a matter of law. There was no such instruction.

Appellant also contends that the court failed to instruct the jury the joint venturers must be co-owners of the business, and must agree to share the profits. These questions were not issues for the jury as they are

determined by the agreement entered into by the parties. The question was one only of intent. Under the decision in the first appeal, a joint adventure could survive the corporation, and here the agreement provides that the Jolins own half of the stock and Oster the other half. Thus where there is a clear agreement demonstrating how the corporation is to be owned, there is no factual issue of whether the parties were co-owners or whether they would share the profits. The agreement and distribution of corporate stock establishes those facts. The question for the jury was one of intent— was it the parties' intent to establish a joint venture and for the joint venture to survive the corporation? That was the issue, and that was the instruction given the jury. The definition of joint venture is consistent with this court's opinions as modified by the first appeal in *Jolin*.[13]

### Review of evidence.

Although appellant does not formally attack the jury's verdict as being contrary to the evidence, he does suggest that the evidence did not support the conclusion that the association was a joint adventure. Appellant does admit, however, that there was testimony to the effect that the association was considered a joint venture. The basic question for the jury was one of intent. The jury had the testimony of both parties to the agreement and had the proper instructions before them. The testimony was conflicting and the issue was for the jury to decide.

One of appellant's primary assertions in this appeal is that this corporation was in reality formed prior to

[13] *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 79, 80, 152 N. W. 2d 911; *Sander v. Newman, supra,* footnote 8; *Goldman v. Cosgrove* (1920), 172 Wis. 462, 179 N. W. 673.

the entry into the agreement upon which the joint adventure is based. Appellant arrives at this conclusion by pointing out that the articles of incorporation were filed in the office of the secretary of state prior to the date of the agreement between Jolin and Oster. This is an effort to avoid this court's determination in the first appeal that a joint venture could survive a corporation. Appellant argues that since the corporation was first, there was nothing for the joint venture to survive.

In response to this argument it must first be pointed out that all through their relationship the parties viewed Campfire as a corporation which was established to carry out their agreement. Indeed, the agreement itself recites: "The parties have agreed to form a corporation for the purpose of carrying on an expanded operation . . . ." Moreover, appellant is not correct in his legal analysis. In *Mortgage Associates v. Monona Shores* [14] this court indicated that a joint venture may exist between corporations and individuals if that was their intent. In *Mortgage Associates* reliance was placed upon the first *Jolin v. Oster* opinion for that proposition. In *Mortgage Associates* the court reached this conclusion despite the fact that the incorporation would have to have preceded any joint venture agreement. While in that case the court reached the result that it was not the intent of the corporations and individuals to enter into a joint venture, it is nevertheless true that this court did not distinguish between prior and postincorporation agreements.

Appellant argues that if this is a joint venture then it conflicts with the provisions of sec. 178.03 (2), Stats., which provides, in part:

"(2) But any association formed under any other statute of this state . . . is not a partnership under this chapter, unless such association would have been

---

[14] (1970), 47 Wis. 2d 171, 183, 177 N. W. 2d 340.

a partnership in this state prior to the adoption of this chapter, . . ."

Appellant relies on an 1897 case [15] in which appellant contends this court held that only shareholders in defectively incorporated corporations were treated as partners prior to the adoption of the Uniform Partnership Act of which sec. 178.03 is part. Thus appellant concludes that prior to ch. 178, this type of association would not have constituted a partnership and thus it could not now. Appellant is wrong for two reasons. First, the case relied upon does not state that "only" shareholders in defective corporations are to be considered partners; it states that when the corporation is not properly established the stockholders will be considered copartners. Second, the view advanced by the appellant does not represent the modern view. In the first appeal,[16] this court indicated that earlier cases indicating that joint ventures could not survive incorporation were overruled. Thus even if appellant's reading of the case is correct, it would not be controlling. Basically this entire argument is designed to circumvent the clear mandate of this court in the first appeal—a joint venture can be established in the vehicle of a corporation. That is the controlling principle; appellant's arguments are technical at best and are not persuasive.

In deciding whether a joint venture existed here the only real question was one of intent. The jury decided that question, and the verdict is supported by the evidence. There could have been a joint venture under the evidence of this case.

### *Parol evidence question.*

On cross-examination appellant Oster was questioned at length about his wealth. Appellant now argues that

---

[15] *Bergeron v. Hobbs* (1897), 96 Wis. 641, 71 N. W. 1056.

[16] *Supra,* footnote 1, at page 629.

this testimony was a violation of the parol evidence rule because it required Oster to impeach his written promise to invest $120,000 and lend the corporation $30,000. Appellant has not correctly viewed this evidence. The court allowed this evidence because "[i]t pertained to the issue of the [appellant's] power to borrow money, a matter directly apropos his agreement to secure credit for the enterprise at a reduced interest rate."

One of the allegations in the complaint in support of his third cause of action against Oster is that Oster did not obtain credit for Campfire at the best possible rates. It is not the contention of respondent that Oster was required to do this by the agreement, but rather that when he did lend money to Campfire he did so at "exorbitant rates of interest." The evidence of his wealth was introduced to demonstrate that a person of his financial standing could have obtained credit at rates better than those which he did on behalf of Campfire. Inasmuch as this evidence was not intended to vary the terms of the written instrument, its introduction does not violate the parol evidence rule.[17]

### Respondent's alleged breach of contract.

Evidence was introduced tending to prove that Jolin had breached the agreement. In response to this evidence, the court instructed the jury as follows:

"You are further instructed that if Jolin failed to substantially perform his obligations in the joint venture, then Oster was entitled to treat the agreement as being at an end. If Oster so chose to treat the agreement as being at an end, then any actions or failures to act by him after that choice or election would not constitute a breach. The burden of proof to establish

[17] Cf. O'Connor Oil Corp. v. Warber (1966), 30 Wis. 2d 638, 642, 141 N. W. 2d 881.

that Jolin failed to substantially perform his obligations in the joint venture is upon Oster."

Appellant asserts that this instruction meant that Jolin's breaches were immaterial since Oster did not choose to rescind the contract. This conclusion is only valid in retrospect—after the jury's verdict. The court's instruction did not in any way say or imply that Oster did not rescind the contract—it addressed the question squarely to the jury. This question was again basically one of the intent of the parties in view of the evidence presented. All the court said was that if Oster viewed the contract as breached by Jolin, he was free to disregard it. This is nothing more than the basic rule that substantial breach of contract discharges the injured party.[18]

While appellant correctly notes that rescission would not be Oster's sole remedy,[19] on the facts of this case there would be no reason for the court to instruct the jury as to any other possible remedies simply because Oster did not attempt to seek any other remedy. Thus if he did consider Jolin to have breached the contract on the facts of this case the only remedy he might have sought was to disregard the contract.

Oster also now claims that the court should have instructed the jury that Jolin had breached the agreement as a matter of law. No request for such a jury instruction was made nor was an objection raised in motions after verdict; thus the issue cannot be raised in this court.[20] In any event, as appellant himself admits, there

---

[18] *Wm. G. Tannhaeuser Co. v. Holiday House* (1957), 1 Wis. 2d 370, 377, 83 N. W. 2d 880; Corbin, *Contracts* (1 vol. ed.), p. 1013, sec. 1253; 1 Black, *Rescission and Cancellation* (2d ed.), pp. 8, 9, sec. 6.

[19] Citing *Miswald-Wilde Co. v. Armory Realty Co.* (1933), 210 Wis. 53, 243 N. W. 492, 244 N. W. 589, 246 N. W. 305.

[20] *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. 2d 380.

was conflicting testimony on this issue and thus the issue was properly for jury determination. There was no error in the instruction.

*Piercing the corporate veil.*

Appellant contends that the judgment in this action improperly allows respondent to pierce the corporate veil to recover the damages in derogation of the rights of the corporation's creditors and other stockholders. This is another attempt to circumvent this court's earlier determination that the joint venture can survive the corporation. Appellant refuses to recognize that the cause of action is for the breach of a fiduciary relationship between Oster and Jolin, not that which existed between them as stockholders in Campfire. By ignoring this most basic concept to the case, appellant argues that respondent is being allowed to pierce the corporate veil. This court held in the first appeal that there can be two entities—a joint venture and a corporation—at the same time and that a joint venture can function within a corporation. Recovery here was for the joint venture relationship, not the corporate stockholder relationship.

*Damages.*

1. *Error in instruction about ownership.* In considering the damage question, the court instructed the jury as follows:

". . . In answering it you will consider that Jolin and Oster, for the purpose of this case, are equal owners of the business. It is not necessary to consider how the shares of stock in the Campfire Land Company, Inc., have been divided among the Jolin interests or the Oster interests. In answering this question you should consider by what amount, if any, Jolin has suffered,

comparing what Jolin would have if Oster had not breached his fiduciary duty, with what Jolin now has. The difference between those two amounts, if fairly arrived at, would properly constitute Jolin's damages. In answering the damage question, you are entitled to consider any loss in compensation which the plaintiff has suffered, any diminution of the value of the plaintiff's one-half interest in Campfire Land Company, Inc., from which all the evidence you find resulted from any breaches committed by the defendant."

Appellant contends that this instruction was erroneous because Jolin was not one-half owner of the corporation. A reading of this instruction will demonstrate that it was intended to assist the jury in separating the corporate damages from that suffered by the respondent.

Again here appellant confuses the corporate losses with those of the joint adventure. Appellant's "one-half interest in Campfire" was his interest as a joint adventurer, not as a corporate stockholder. All this instruction did was to tell the jury that if they found that the joint venture was intended and did survive the corporation, and that Oster did breach his duties to Jolin, then they were to answer how much Jolin was damaged—how much he lost because of Oster's conduct. It would appear also that the parties always regarded this agreement as between the two men, not as between both families. For this reason in the first trial the rest of the Jolin family were stricken as parties plaintiff on the motion of defendant, appellant herein. Given the complexity of the legal relationship which would exist between joint venturers who are also stockholders in the corporation used as a vehicle for the joint venture, the instruction to the jury on this question was proper. To spell out the relationship as appellant suggests would have confused the jury completely.

2. *Necessity for accounting.* Appellant contends that respondent was entitled to no damages until an account-

ing was taken and the liabilities of the partnership determined. As noted above,[21] the line of cases relied upon by appellant relate to the dissolution of a partnership, not a situation in which one partner sues the other for the breach of a fiduciary obligation. The fact that respondent could recover damages if he demonstrated a joint venture and a breach of fiduciary duties was clearly established in the first appeal. This is basically another attempt to reargue the issues decided the first time around.

3. *Accounting methods.* An accountant called by respondent testified as to the accounting method employed to reach a certain net worth of the joint venture and corporation. An accountant called by appellant testified that respondent's accounting methods were not reliable and distorted the worth of the corporation. After lengthy testimony the accountant for appellant handed Mr. Croak, one of appellant's attorneys, a book and the following colloquy took place:

"*Q.* . . . Now, you've handed me a book marked, *Accounting Trends And Techniques,* 19th edition, American Institute of Certified Public Accountants; is that correct? *A.* This is correct.

"*Mr. Croak:* Your Honor, I'd like to suggest that rather than the whole book, that we make a copy of the particular material that he's going to refer to. Of course, counsel, I would have no objection to referring to anything else in the book that he wanted to, but at least we're going to concern ourselves with just one entry.

"*The Court:* Any objection?

"*Mr. Harding:* I don't know what the document is, Your Honor, but if he wants to photostat certain pages, I have no objection to that.

"*The Court:* The court has accepted the opinion of the witness as a certified public accountant for eighteen years. Is it necessary to buttress this with a book?

"*Mr. Croak:* Well, I'll defer that then, Your Honor."

---

[21] *See* footnote 12, *supra.*

The book was never again offered into evidence.

Appellant now claims that exclusion of the book was error. The testimony establishes, first, that counsel withdrew his request to offer the book into evidence, that counsel for respondent did not object "to photostat[s of] certain pages," and that no foundation was laid as to how authoritative or recognized the book is. While under *Lewandowski v. Preferred Risk Mut. Ins. Co.*[22] the book might have been admissible to support the testimony of appellant's witness, in this case it was not properly offered and its offer was withdrawn. The record conclusively shows that respondent did not object to its introduction, but rather that counsel for appellant "deferred" its introduction sua sponte when questioned by the court.

There was extensive testimony on the proper method of computing the corporation's worth and the question was for the jury to decide.

4. *Testimony of John B. Straub.* In the 1968 trial in this case John B. Straub testified in relation to the collateral trust notes issued by Campfire. Straub died prior to the 1970 trial, and his testimony was read to the jury in the new trial. Appellant claims this was error.

At the first trial, part of Straub's testimony was allowed into evidence only against the defendant M & I Bank. In the new trial this same testimony was admitted to show what Straub did to get the notes on the market. In closing argument counsel for respondent said that "the testimony of Jolin was that yes, Oster did promise to buy the notes, and reneged on it." It must be pointed out that the statement made by counsel for respondent was an accurate characterization of Jolin's testimony without any reference to the testimony of Straub. Jolin

---

[22] (1966), 33 Wis. 2d 69, 76, 77, 146 N. W. 2d 505.

testified that Oster said he would buy the notes and that subsequently Oster refused to do so. Thus, quite clearly the testimony of Straub was not introduced to prove the veracity of the conversation between the parties and thus is not hearsay evidence because it was not offered to prove the veracity of the statements testified to.[23]

It is also apparent that the introduction of Straub's testimony at the second trial falls squarely under the provisions of sec. 885.31, Stats., which provides:

"**Testimony of deceased or absent witness.** The testimony of a deceased witness, or a witness absent from the state, taken in any action or proceeding (except in a default action or proceeding where service of process was obtained by publication), shall be admissible in evidence in any retrial, or in any other action or proceeding where the party against whom it is offered shall have had an opportunity to cross-examine said witness, and where the issue upon which it is offered is substantially the same as the one upon which it was taken."

Inasmuch as the witness had died, the parties and issues were the same, and the appellant had the opportunity for cross-examination, the admission of Straub's testimony was proper at the new trial.

5. *Sufficiency of Evidence on Damages.* In reviewing the evidence the scope of this court's review is limited to determining if there was any credible evidence to support the damage verdict.[24] Appellant admits that respondent's expert witness demonstrated that the net worth of Campfire had declined an amount in excess of the jury verdict. Although appellant attacks the reliability of the witness' calculations, as noted above,

---

[23] *Gilbert v. United States Fire Ins. Co.* (1970), 49 Wis. 2d 193, 208, 181 N. W. 2d 527.

[24] *Merz v. Old Republic Ins. Co.* (1971), 53 Wis. 2d 47, 52, 191 N. W. 2d 876.

this was a question for the jury. The jury was also entitled to believe respondent's testimony about his loss of income. There is also evidence to support the proposition that Oster's conduct necessitated Jolin's obtaining credit at higher rates of interest.

There can be no denial that the issue of damages was intensively litigated and argued. The issue of the proper accounting method was before the jury and we conclude that the evidence of respondent supports the $161,000 award.

*Other issues.*

Appellant concludes his argument by complaining that "The trial court committed many other errors, too numerous to mention." Appellant goes on to make a general attack upon the court's instructions to the jury. In the trial court, in motions after verdict appellant assigned as error that "the court erred in its instructions to the jury." The trial court appropriately refused to consider this assertion because the "motion [is] so general." The bald assertion that the jury instructions were erroneous does not properly preserve the issue on appeal.[25] Even if this court would reach the issues, however, the asserted errors are so general as to preclude meaningful review.

*By the Court.*—Judgment affirmed.

HEFFERNAN, J., took no part.

[25] *Peterson v. General Casualty Co.* (1951), 259 Wis. 370, 372, 48 N. W. 2d 459.