Christos N. KRITIKOS and Eastern Shipping Company, Plaintiffs-Appellants,

v.

PALMER JOHNSON, INC., a corporation, Defendant-Appellee.

No. 85–2549.

United States Court of Appeals, Seventh Circuit.

Argued May 7, 1986.
Decided June 9, 1987.

---

Hugh C. Griffin, Lord Bissell & Brook, Chicago, Ill., for plaintiffs-appellants.

Roger Pinkert, Pinkert, Smith, Koehn Weir & Jinkins, Sturgeon Bay, Wis., for defendant-appellee.

Before COFFEY, EASTERBROOK, Circuit Judges, and CAMPBELL, Senior District Judge.[*]

COFFEY, Circuit Judge.

Christos N. Kritikos brought this contract action against Palmer Johnson for specific performance and damages arising from the delay in Palmer Johnson's construction of his yacht. Palmer Johnson counterclaimed for amounts due under the contract and for damages incurred resulting from Kritikos' refusal to accept the yacht. The district court found that Kritikos breached the contract and awarded Palmer Johnson damages on its counterclaim. Kritikos appeals. We affirm in part, reverse in part, and remand.

I

Palmer Johnson, Inc., defendant-appellee, a ship building corporation located in Sturgeon Bay, Wisconsin, builds sailing vessels. The plaintiff-appellant, Christos Kritikos, of Chicago, Illinois, contracted January 10, 1984, with Palmer Johnson to have his one of a kind sailing yacht (the "Karyatis")

---

[*] The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

constructed in accordance with plans supplied by his architects, Sparkman and Stephens of New York.[1]

The contract provided that Palmer Johnson was to construct the Karyatis in approximately nine months and deliver it, on or before October 15, 1984, to Mackinac Island, Michigan. The contract further provided that if the delivery of the boat was delayed past the date of October 15, 1984 a liquidated damages provision would be triggered.

The business relationship between the parties can best be described as stormy.[2] The boat was not delivered on the agreed date (October 15, 1984) to Kritikos. On December 15, of that same year, Palmer Johnson attempted to tender delivery of the Karyatis to the plaintiff. Kritikos refused delivery asserting that the boat was not completed according to specifications. At this point, Palmer Johnson sought assurances from the plaintiff that he would make the final payment due, otherwise it would proceed to sell the boat and obtain whatever it could from the sale. Shortly thereafter, the plaintiff filed a diversity suit in the United States District Court for the Eastern District of Wisconsin seeking liquidated damages for late delivery of the yacht, specific performance, and a preliminary injunction to prevent the sale of the yacht pending disposition of the action on the merits. Palmer Johnson counterclaimed for amounts due under the contract and for damages for storage and maintenance items, additional man hours, and extended insurance coverage.[3]

The district court denied the plaintiff's request for a preliminary injunction. In his suit before the district court, Kritikos sought to have the liquidated damages penalty enforced alleging that the problems were a result of Palmer Johnson underestimating the amount of time required to build a sailing ship of this type and that

Palmer Johnson was solely responsible for non-delivery of the boat on or before the agreed date. Palmer Johnson argued that it was not liable for the liquidated damages since the cause of the delays were a combination of (1) late delivery of plans from the plaintiff's New York architects, (2) Kritikos' unavailability to make decisions and provide information, and (3) change orders which by their terms added several days to the delivery of the vessel. The district court found that the plaintiff Kritikos in refusing to accept delivery of the Karyatis on December 15, 1984, had breached the contract. As for the delays and any possible liquidated damages, the district court stated there was "some fault on both sides" regarding the delays, but "the vast majority of the lack of good faith and reasonableness regarding the condition of the yacht on December 15 belongs to the plaintiffs' side of the suit."

The trial court awarded the defendant $215,407.05 on its counterclaim based on unpaid contract installments, storage, extended insurance, and additional man-hours less a $22,000 credit to the plaintiff for work not completed on the yacht. The judgment was subsequently amended by order of the court to provide that payment of the judgment and acceptance of the yacht did not waive Kritikos' right to appellate review. Kritikos paid the judgment and accepted delivery of the yacht.

Within a few weeks after delivery of the yacht, the propeller and central shaft fell off the yacht at sea while it was under power. The plaintiff returned to court and filed a post-trial motion requesting the trial court to amend its findings and requested that the court's original decision be supplemented to order Palmer Johnson to honor the warranty provisions of the contract re-

---

**1.** The estimated cost of building the yacht was approximately $1,201,000.

**2.** During the construction of the Karyatis the plaintiff brought suit against the defendant arising from a one week delay. The suit was ultimately dismissed on stipulation.

**3.** Palmer Johnson also counterclaimed for damages upon the finding that the complaint of the plaintiff was legally frivolous. The district court found the lawsuit to be "ill-advised" but not legally frivolous.

garding the problems with the propeller and central shaft.[4]

The district court denied the motions, including the plaintiff's request to supplement its decision regarding the warranty since the warranty issue was not raised at trial and because the plaintiff had breached the contract thus, Palmer Johnson as the injured party, was discharged from the contract.

Plaintiff on appeal raises three issues: (1) Did the District Court improperly rely upon the contents of two letters (Exhibits 90 and 93) dealing with the causes of the delays in violation of Rule 408 of the Federal Rules of Evidence which prohibits the use of evidence arising from compromise negotiations and offers to compromise; (2) Did the district court err in his finding that the plaintiff breached the contract and furthermore was responsible for all relevant delays; and (3) Were the applicable warranties still enforceable after the plaintiff was adjudged to have breached the contract.

## II

 Where jurisdiction is premised upon diversity of citizenship, 28 U.S.C. § 1332, this Court must apply the substantive law of the forum state including the conflict of law rules. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxson v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). From the record we are led to believe that both parties have agreed that Wisconsin law governs. "When the parties fail to consider the choice of law in a diversity case, the substantive law of the forum is presumed to control." *Baltimore Orioles v. Major League Baseball Players*, 805 F.2d 663,

681 n. 33 (7th Cir.1986); *see also National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.*, 779 F.2d 1281, 1285 (7th Cir.1985). Because the parties failed to raise the choice-of-law issue on appeal we deem the question to be waived.

Kritikos argues that the trial court violated Rule 408 of the Federal Rules of Evidence by improperly relying on statements in two letters as the primary support for its decision finding him in breach of the contract when in fact the letters were written for settlement purposes only. Rule 408 of the Federal Rules of Evidence (regarding "Compromise and offers to compromise") provides that:

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or in validity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

The letters, dated January 5[5] and 12,[6] 1985 (defendant's Exhibits 90, 93), were

---

**4.** The contract contained a warranty provision requiring Palmer Johnson to repair or replace any parts or equipment found to be defective due to poor workmanship or materials within six months after delivery.

**5.** The letter dated January 5th stated:
5th January, 1985
Dear Chris [the plaintiff],
The following is a summary of the meeting between Evan Burkholder, Bill Langan, Bill Lind, Rod Stephens and myself held yesterday at Sparkman and Stephens office in New York.

. . . .

*4) Delays*
After a lengthy discussion I believe that we all agreed that PJ could probably document most of the delays. Bill Langan admitted that at least seventy five percent of the drawings were late. Also there were specific delays connected with the engine and the gear box. Plus Bill Langan felt PJ could document considerable delay due to late decisions on your or S & S part. We agreed that PJ handled the situation poorly in the early part and were probably equally to blame. Overall the feel-

**6.** See note 6 on page 422.

written by Nigel Ingram, Kritikos' "owners representative" at the Palmer Johnson yard, shortly after Kritikos refused to accept delivery of the yacht. The letters summarized the discussion between Ingram, three representatives of the architect (Bill Langan, Bill Lind and Rod Stephens) and Evan Burkholder, the plaintiff's attorney. The plaintiff's brief characterizes the letters "as part of an attempt to work out a settlement and compromise of Kritikos' and Palmer Johnson's differences without a lawsuit."

At trial, the letters were introduced in an attempt to impeach the testimony of Bill Langan, one of the plaintiff's architects, and later to refresh Langan's recollection as to the opinions he expressed at the time in question. Later in the trial, the letters were used to impeach the plaintiff's testimony when he denied being advised that his claim lacked merit. The letters were also used to refresh Ingram's memory as to the responsibility for delays in completion of the Karyatis.

The trial judge stated the following regarding the exhibits in reaching his decision:

"That the delays were primarily attributable to the plaintiffs' side of the aisle is further supported by defense Exhibits 90 and 93. In Exhibit 90, a January 5, 1985 letter to Mr. Kritikos from Nigel Ingram, Mr. Kritikos' 'owners representative' at the yard, a meeting that occurred in the Sparkman & Stephens office on January 4, 1985 is memorialized. The memo states:

After a lengthy discussion I believe that we all agreed that PJ could probably document most of the delays. Bill Langan admitted that at least 75% of the drawings were late. Also there

were specific delays connected with the engine and the gearbox. Plus, Bill Langan felt PJ could document considerably delay due to late decisions on your or S & S' part. We agreed that PJ handled the situation poorly in the early part and were probably equally to blame. Overall the feeling seemed to be that this would be a hard case to argue from our side.

Defendant's Exhibit 93, a second letter to Mr. Kritikos from Mr. Ingram dated January 12, 1985, seeks to clarify the preceding memo by stating that Bill (meaning Mr. Langan, the architect at Sparkman & Stephens) feels the cause of these delays were divided between Sparkman & Stephens' workload and your travel schedule."

The plaintiff argues that the two letters involved feelings, comments, opinions and recommendations for settlement purposes and negotiations and were thus inadmissible under Rule 408 of the Federal Rules of Evidence. Defendant counters that at the time the letters were written there was no disputed claim as to either validity or amount, only a refusal by the plaintiff to accept delivery of the Karyatis.

In support of his argument that the letters were inadmissible, the plaintiff primarily relies on a Fifth Circuit case, *Ramada Development Co. v. Rauch*, 644 F.2d 1097 (5th Cir.1981). *Ramada Development* involved a breach of contract in the construction of a motel in which the builder of the motel, Ramada Development sued Rauch, the owner, after Rauch failed to make the final progress payment because of his alleged dissatisfaction with the work. The Fifth Circuit affirmed the district court's refusal to admit a report prepared by an architect employed by Ramada "because

ing seemed to be that this would be a hard case to argue from our side.
. . . .
My best regards,
Nigel Ingram

**6.** The letter dated January 12th stated:
12th January, 1985
Dear Chris,
After discussion with Bill Langan I feel I should clarify one aspect of my letter re our

meeting in New York last Friday 4th January, 1985.
. . . .
. . . . Bill, however feels the cause of these delays were divided between Sparkman & Stephens' workload and your travel schedule.
. . . .
Best regards
Nigel S. Ingram

the report was a tool in an unsuccessful settlement attempt." 644 F.2d at 1106. The court responded in the affirmative to the question " 'whether the statements or conduct were intended to be part of the negotiations toward compromise.' " *Id.* (quoting 2 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 408 [03], at 408–20 to –21 (1980)). The Fifth Circuit stated that the report came within the exclusionary scope of Rule 408 because the report: "[w]ould function as a basis of settlement negotiations regarding the alleged defects in the motel. The report was to identify arguable defects that could then be discussed in monetary terms in negotiations." *Id.* at 1107 (footnote omitted).

This circuit has had several opportunities to consider Rule 408 and its parameters. *See, e.g., Cates v. Morgan Portable Bldg. Corp.,* 780 F.2d 683 (7th Cir.1985); *Breuer Elec. Mfg. Co. v. Toronado Systems of America, Inc.,* 687 F.2d 182 (7th Cir.1982); *Central Soya Co., Inc. v. Epstein Fisheries, Inc.,* 676 F.2d 939 (7th Cir.1982). In *Central Soya,* we discussed the purpose of Rule 408:

> "It is to encourage settlements. The fear is that settlement negotiations will be inhibited if the parties know that their statements may later be used as admissions of liability."

676 F.2d at 944.

■ We agree with the plaintiff that the trial judge improperly used the letters and the statements made therein as a substantive basis for finding the plaintiff primarily responsible for the delays. The letters were written by Nigel Ingram, the plaintiff's "owners representative" at the Palmer Johnson yard, with the objective of advising the plaintiff of a possible compromise solution before legal action was commenced. The letter marked Exhibit 90 detailed a possible solution for Kritikos to consider in hopes of reconciling the differences between the parties; Exhibit 93 (letter) clarified what was said in the aforementioned letter. The letters were never introduced as substantive proof that the plaintiff was responsible for the delays. We hold that the trial judge erred in using the letters as support for finding "the lion's share of the delay" attributable to the plaintiff or his architects. His use of the contents of the letters violated the objective of Federal Rule of Evidence 408 which we have stated is "to encourage settlements." *Central Soya,* 676 F.2d at 944.

■ Despite holding that the trial judge improperly used the information in the letters we refuse to disturb his finding that the delay in the progress of the building of the ship was primarily attributable to the plaintiff since other parts of the record, when viewed in its entirety, supports his determination. The trial judge in his opinion took note that "After having expressed quite strongly an interest to be intimately involved in all of the details of the construction, Mr. Kritikos did not visit the yard where the yacht was being constructed for a four-month period between March 17 and July 19 of 1984." Further testimony at trial established that the plaintiff's architects provided the drawings and plans for the ship in a less than timely manner and made it nigh onto impossible to meet the scheduled completion date of the yacht. Bill Lind, a designer with Sparkman and Stephens (the plaintiff's architects) testified that the schedule as to when the plans for the design of the ship would be delivered was amended because Sparkman and Stephens could not keep up with the original schedule and that he knew that if the plans were late that Palmer Johnson had a good chance of not being able to deliver the vessel on time. Part of Lind's deposition was read into evidence:

> "Q. *Would it be a fair statement that approximately 75 percent of the plans submitted by Sparkman and Stephens were not modified on the basis of the initial time schedule?*
>
> A. That is Bill Langan's estimate of how late we were. I'd have to go through and find out what percentage it was. *But it would be a fair statement to say that a lot of plans according to their time schedule were late.*

*Q. You knew, as the letters indicated, that if, in fact, plans were going to be late there would be a good chance that the vessel would not meet its delivery due date which was October of 1984, did you not?*

*A. Correct."*

MR. PINKERT [Counsel for Palmer Johnson]:

Q. You remember giving these questions and answers?

A. Yes, I did.

MR. PINKERT: And I would offer those questions and answers, Your Honor.

Mr. Lind's testimony when coupled with evidence of the plaintiff's unavailability for four of the nine months of the production schedule clearly support the district court's finding that the plaintiff was responsible for all of the relevant delay. In light of the overwhelming evidence in the record we agree with the trial judge's finding that the plaintiff was responsible for the vast majority of the relevant delays and further hold whatever harm, if any, resulting from the trial judge's use of the letters (Exhibits 90 and 93) was harmless.

### III

a. The plaintiff argues that the district court's finding that all relevant delay was attributable to him was clearly erroneous since the defendant's "gross underestimation" of the time required to complete the ship was the primary cause of the delay. Rule 52(a) of the Federal Rules of Civil Procedure provides that: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge ... the credibility of the witnesses." The Supreme Court in *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985) discussed the clearly erroneous standard:

" '[a] finding is clearly erroneous when although there's evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duties under Rule 52 if it undertakes to duplicate the role of the lower court. 'In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo.'* *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949); *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982)."

We thus must limit review of the evidence to determine whether the trial court's finding is "plausible in light of the record viewed in its entirety." In its brief, the plaintiff makes several arguments based on its interpretation of the facts in an attempt to have this court hold the trial court's finding clearly erroneous that all reasonable relevant delay was attributable to him. The plaintiff's primary argument is that Palmer Johnson grossly underestimated the man-hours required to complete the yacht, and therefore was unable to complete the yacht as originally agreed upon, thus Palmer Johnson should be held responsible for the delays. The district court gave several cogent reasons in finding that the plaintiff was primarily responsible for the delay, among them the late delivery of the architect's drawings (supported by testimony at trial) and the plain-

tiff's unavailability to review the ship's progress for four of the nine months of the construction period. We hold that the trial court's finding was indeed more than plausible when reviewing the record in its entirety.

b. The plaintiff also argues that the court's finding that he was primarily responsible for the delay is at odds with the court's decision to hold him only liable for 25% of the claimed additional man-hours incurred by Palmer Johnson as a result of the delays. Kritikos asserts that the contract made no provision for Palmer Johnson to recover any delay damages, and thus its claim for the additional hours attributed to delays should have been denied. The plaintiff cites one case *Commerce International Co. v. United States*, 167 Ct.Cl. 529, 338 F.2d 81 (1964) in support of this argument. He asserts that the *Commercial International* case holds that where the contract does not include a warranty provision against the owner's or his architect's delays the contractor has no right to delay damages. The plaintiff's selective reading of the case conveniently ignores the Court of Claims' amplification that this principle presupposes that the contracting party "has met the ever-present obligation of any contracting party to carry out its bargain reasonably and in good faith". *Id.* 338 F.2d at 85. The Court of Claims further stated:

"The rule is ... that, when the Government's delay in furnishing work or materials stems from its failure to do what it should under the particular contract, it will have to respond in damages for the resulting additional outlays which are proved to have been caused the contractor."

*Id.*

■ The trial court found that the plaintiff's refusal to accept the yacht on Decem-

ber 15, 1984 constituted a breach of contract since the yacht was complete and ready for delivery on December 15, 1984. The court in fashioning a remedy for the breach found Kritikos liable for 25% of the additional hours necessary arising from his refusal to accept the yacht stating: "I believe a 25% allocation on this figure to be fair, considering the relative degrees of fault and responsibility for the additional time." It is well-settled that a trial court is given wide discretion in fashioning a remedy. After hearing all the evidence and concluding that Kritikos breached the contract, the trial court chose to award Palmer Johnson 25% of the additional man-hours resulting from that breach stating that:

"I find that Mr. Kritikos, by refusing acceptance of the yacht on December 15, 1984, breached the contract. I find him liable for the following:

\* \* \* \* \* \*

[$]30,741.75 25% of the claimed additional man-hours incurred by Palmer Johnson as a result of delays as described in Defendant's Exhibit 133 and Part D of Defendant's Exhibit 136. I believe a 25% allocation on this figure to be fair, considering the relative degrees of fault and responsibility for the additional time."

The plaintiff has failed to offer any compelling reason why this award is not a fair disposition. We hold that there is nothing inconsistent in the trial court's finding that Kritikos is liable for 25% of the additional hours arising from his refusal to accept delivery and refuse to overturn the trial court's award of delay damages.[7]

## IV

■ The plaintiff argues lastly that the district court erred in its post-trial order denying enforcement of the warranty provisions of the contract. After Kritikos paid

7. The plaintiff's arguments that the district court erred in purportedly applying the "common practice of industry" standard in analyzing whether the ship was completed, or in the alternative, that the court's finding that Palmer Johnson tender of the yacht was within common industry practice was clearly erroneous are without merit. The district court thoroughly discussed its reasoning for finding that the ship was complete as of December 15, 1984 relying on the report of David Pedrick as well as the testimony he offered at trial. We agree that the "vast majority of the lack of good faith and reasonableness" was properly attributable to the plaintiff.

the judgment and took delivery of the yacht, the propeller and central shaft fell off a few weeks later while the boat was in sail. Kritikos returned to court and filed a post-trial motion requesting that the district court supplement its original decision to order Palmer Johnson to honor the warranty provisions of the contract regarding the propeller and central shaft falling off. The district court denied Kritikos' request to supplement its decision stating:

> "The issue of the warranty was not raised at trial. In addition, in the decision of May 31st [1985], I found that the plaintiffs breached the contract. A substantial breach of a contract discharges the injured party from the contract. *See Jolin v. Oster,* 55 Wis.2d 199 [198 N.W.2d 639] (1972)."

We disagree with the district court's conclusion that Palmer Johnson is discharged from the contract and its obligations under the warranties.

Palmer Johnson could have sued for rescission; instead, it chose to countersue for enforcement. For it to be allowed to obtain the full contract price of over $1 million and then be relieved of its obligations under the contract and allowed to deliver a faulty product would be unfair.

The district court found that Kritikos breached the contract and that "A substantial breach of a contract discharges the injured party from the contract." citing *Jolin v. Oster,* 55 Wis.2d 199, 198 N.W.2d 639 (1972).[8] *Jolin* fails to give any guidance as to what constitutes a substantial breach, but in *Appleton State Bank v. Lee,* 33 Wis.2d 690, 148 N.W.2d 1 (1967) the Wisconsin Supreme Court, in addressing how substantial a breach must be to warrant rescission stated:

> "In order to establish a breach sufficient to constitute repudiation of the entire agreement the nonperformance or breach must be substantial.
>
> '... a breach which goes to only a part of the consideration which is incidental and subordinate to the main purpose of the contract, and which may be compensated in damages, does not warrant a rescission of the contract; ...' [Citing to 17 Am.Jur.(2d) Contracts, p. 983, Sec. 504 in a footnote]."

Although neither party sought a rescission in the instant case, the discussion in *Appleton* of what constitutes a substantial breach is still instructive.

Kritikos refused delivery of the yacht on December 15, 1984, because he believed the "ship was not completed in accordance with the plans and specifications in various respects." At that time he had made five of the six progress payments totalling $1,080,-900. Despite finding that Kritikos breached the contract the trial judge did not find it to be of such a substantial nature that it could not be compensated for in damages.

Palmer Johnson brought a counterclaim in this action for amounts due under the contract and for delay damages. Instead of seeking a rescission of the contract it sought to have the contract enforced, thus its obligations under the contract are still in force. *See, e.g.,* Uniform Commercial Code 2–612(3). We hold that the plaintiff should be allowed to pursue its warranty claim.

## V

We affirm the district court's decision that all relevant delay was attributable to Kritikos and its award of damages, and reverse its finding that the plaintiff's warranty claim was extinguished, and remand for proceedings consistent with this opinion.

---

8. The district court found, in the alternative, that: "The issue of warranty was not raised at trial." The appellant had no claim to make on the warranty at the time of trial since the problems with the propeller and central shaft did not occur until after he paid the judgment and accepted delivery of the yacht, thus it was impossible for him to raise the issue at trial for he had no knowledge of the problem.