IN THE MATTER OF THE APPLICATION OF PIONEER MILL COMPANY, LIMITED, TO HAVE ITS TITLE REGISTERED AND CONFIRMED TO LAND IN THE DISTRICT OF LAHAINA, ISLAND AND COUNTY OF MAUI, TERRITORY OF HAWAII.

No. 2188.

ARGUED JANUARY 29, 1935.          DECIDED FEBUARY 9, 1935.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

On June 28, 1919, the Pioneer Mill Company filed an application in the land court to register and confirm its title in and to certain land situate on the Island of Maui. The Territory of Hawaii was cited as one of the respondents. On July 13, 1920, an answer was filed by the then attorney general of the Territory and a claim was made for and on behalf of the Territory to certain portions of the land described in the applicant's petition. No steps were thereafter taken on behalf of the Territory to bring the case to trial nor were any such steps taken on behalf of any of the other parties to the controversy, except motions to set for trial, the last of which was filed on September 1, 1934, by W. B. Lymer, Esquire, who appeared as one of the attorneys for the applicant, the Pioneer Mill Company. Mr. Lymer became attorney general of the Territory on March 27, 1925, and remained continuously in that office until June 1, 1928. Since that time he has had no connection whatever with the attorney general's office. During Mr. Lymer's incumbency, in his annual reports to the governor for the years 1925, 1926 and 1927, under the heading "Pending Cases Land Court," the Pioneer Mill application was listed. On October 10, 1934, the cause came on for hearing before the judge of the land court upon the Territory's motion to disqualify Mr. Lymer from acting for the Pioneer Mill Company. In the argument of the motion it was admitted by Mr. George P. Kimball, deputy attorney general of the Territory, that during Mr. Lymer's term of office as attorney general he had no personal knowledge of the existence of the case at bar. The judge of the land court entered an order denying the

motion of the Territory and the case is here on exceptions.

The single question presented is whether an attorney general of the Territory, whose duty it is to represent the Territory in all litigation in which it has an interest, may, after his retirement from office, appear as attorney for a party whose interest is adverse to that of the Territory in a proceeding instituted before his appointment and which proceeding remained quiescent during his term of office, when it is agreed that he had no personal knowledge of the case prior to his retirement. Section 1486, R. L. 1925, provides: "The attorney general shall appear for the Territory personally or by deputy, in all the courts of record, in all cases criminal or civil in which the Territory may be a party, or be interested, and may in like manner appear in the district courts in such cases."

When Mr. Lymer took the oath of office, which he was obliged to do by section 19 of the Organic Act, he bound himself to conscientiously discharge the duties imposed upon him by statute. His relation to the Territory thus became the sacred and confidential one which an attorney bears to his client—a relation which demands the highest degree of loyalty and fidelity known to the law. So scrupulous is the law in protecting the client against possible injury from the apostasy of his counsel that the latter is forbidden from representing adverse interests even after his relation with his client has ceased.

In *In re Boone*, 83 Fed. 944, the court said (p. 952): "It is the general and well-settled rule that an attorney who has acted as such for one side cannot render services professionally in the same case to the other side, nor, in any event, whether it be in the same case or not, can he assume a position hostile to his client, and one inimical to the very interests he was engaged to protect; and it makes no difference, in this respect, whether the relation itself has been terminated, for the obligation of fidelity and loyalty still continues."

Thornton on Attorneys at law, § 174, states the rule thus: "He" (the attorney) "can undertake no adverse employment no matter how honest may be his motives and intentions, or even though, while acting for his former client, he acquired no knowledge which could operate to the client's disadvantage in the subsequent adverse employment."

There is no dispute as to the soundness of the views so forcefully and eloquently expressed by the court in the *Boone* case and by Thornton. It is contended by Mr. Lymer, however, that his admitted ignorance of the pendency of the *Pioneer Mill* case renders the rule entirely inapplicable to him and that after his retirement from office he was free to accept employment by a party whose interest in the pending cause was and is antagonistic to that of the Territory. One of the duties imposed upon the attorney general is that of representing the Territory in all courts of record in cases in which the Territory is a party. As a necessary consequence of this duty it was equally Mr. Lymer's duty to inform himself of what cases were pending in the courts of record in which the Territory had an interest. Had he done this he would have known of the present case and that the Territory was a party to it. To say that because of his ignorance he never occupied such a relation to the Territory, so far as the. *Pioneer Mill* case is concerned, as to bring him within the general rule and preclude him from taking an adverse employment would be to renounce the great ethical principle upon which the rule is founded.

We are of the opinion that whether the attorney general had any actual knowledge of this case is immaterial. It is clear from the statute above quoted that Mr. Lymer was the duly commissioned attorney general for the Territory in the instant case and his unawareness of its ex-

istence cannot relieve him from the strict observance of the obligation which a lawyer is under to his client.

Moreover, to agree with the contention advanced by Mr. Lymer would establish a precedent that might lead to very unfortunate consequences. It might offer a temptation to future attorneys general and their deputies, as well as to members of the bar engaged in private practice, to betray the trust which the public, the profession and the courts repose in them. Courts cannot be too rigorous in their requirement that members of the bar abstain from placing themselves in a position where they would be suspected of professional duplicity.

The exceptions are sustained.

*W. B. Lymer* (*F. E. Thompson* with him on the brief) for the applicant.

*G. P. Kimball*, Deputy Attorney General (*W. B. Pittman*, Attorney General, with him on the briefs), for the Territory.