MAURICE L. SILVER, M.D., Plaintiff-Appellant,
v. CASTLE MEMORIAL HOSPITAL, et al.,
Defendants-Appellees

No. 4998

August 19, 1971

RICHARDSON, C.J., ABE, LEVINSON AND KOBAYASHI, JJ.,
AND CIRCUIT JUDGE VITOUSEK IN PLACE OF
MARUMOTO, J., DISQUALIFIED

OPINION OF THE COURT BY KOBAYASHI, J.

Appellant has filed, before this court, a motion to disqualify the law firm of Anthony, Waddoups, Hoddick and Brown from representing any of the named defendants in this case.

Appellant's motion to disqualify the law firm, motion for preliminary injunction, affidavit and statements of appellant's counsel, Mr. Joseph Ryan, are most confusing—sometimes misleading, and have required considerable number of hours of review and sorting out of voluminous records to develop some clarity to the facts of the number of cases wherein appellant is involved and which have a bearing on the problem before this court.

### I. FACTUAL STATUS

A. *Maurice L. Silver, M.D., v. Queen's Hospital, et al.;* circuit court, first circuit; Civil No. 24188.

Complaint was filed on February 2, 1968.

On March 4, 1968, plaintiff filed a motion to disqualify the law firm of Robertson, Castle and Anthony (predecessor of the law firm of Anthony, Waddoups, Hoddick and Brown) from representing any of the named defendants in the case.

Plaintiff alleged that Mr. J. Garner Anthony was plaintiff's attorney and had represented plaintiff in plaintiff's ef-

forts to be allowed to practice his profession at Queen's Hospital and thus, is disqualified in serving as counsel for defendants in this case. Plaintiff filed the following affidavit in support of said motion to disqualify:

\* \* \* That he makes this affidavit in order to show the Court that he sought the legal services and advice and consulted with THOMAS M. WADDOUPS, Esquire and J. GARNER ANTHONY, Esquire relative to his right to practice his profession in the QUEEN'S HOSPITAL aka QUEEN'S MEDICAL CENTER, defendant herein.

That he first asked MR. WADDOUPS to represent him in that he came to know MR. WADDOUPS when MR. WADDOUPS was Legal Chairman of the Portlock Road Community Association in its controversy with the Bishop Estate in the Lease Negotiations 1963-1964. At that time MR. ANTHONY represented the Bishop Estate. Both lawyers were from the firm of ROBERTSON, CASTLE AND ANTHONY.

That in 1963-1964 your affiant lived at 219 Portlock Road and he was President of the Portlock Community Association.

That when affiant asked MR. WADDOUPS to represent him in his effort to be allowed to practice his profession in QUEEN'S HOSPITAL MR. WADDOUPS referred affiant to J. GARNER ANTHONY, Esquire of the same firm of ROBERTSON, CASTLE AND ANTHONY.

That your deponent went to the office of MR. ANTHONY and consulted with MR. ANTHONY on at least three separate occasions and also communicated with MR. ANTHONY by mail and by telephone.

That MR. ANTHONY represented to your affiant that he, MR. ANTHONY of the law firm of ROBERTSON, CASTLE AND ANTHONY, was representing your affiant and that he, MR. ANTHONY, was taking steps to have your affiant's case heard by the Board of the QUEEN'S HOSPITAL.

That your deponent verily believes that he was the

client of MR. ANTHONY and that MR. ANTHONY was affiant's attorney and your affiant believes that a hearing will fully disclose that MR. ANTHONY and MR. WADDOUPS gave legal advise and legally counselled your affiant.

That your affiant asks this Court to set a date for a hearing relative to this matter and that after a full and fair hearing this Court make a finding of fact as to whether the Law firm of ROBERTSON, CASTLE AND ANTHONY is disqualified from representing any of the named defendants herein, including J. GARNER ANTHONY, Esquire.

That your affiant also asks that a protective order issue pursuant to Rule 30(b) Hawaii Rules of Civil Procedure until this matter is resolved by the Court. * * *

On March 7, 1968, Judge Thomas Ogata, after a two-day hearing, determined that at no time had there been established an attorney-client relationship between the law firm and plaintiff and denied the motion. The trial court found that plaintiff went to see Mr. Anthony of the law firm knowing that Mr. Anthony was a member of the board of directors of the Queen's Hospital and that that was the capacity in which plaintiff sought Mr. Anthony's aid. The court further found that nothing of a confidential nature was disclosed or revealed by plaintiff to Mr. Anthony.

The approximate period of alleged attorney-client relationship testified to by plaintiff covered the years of 1964 and 1965.

This case has not been tried on the merits as yet.

---

In a proceeding before the supreme court, numbered 4817, plaintiff appealed the trial court's denial of the motion to disqualify. The appeal was dismissed on the ground that the judgment appealed from was interlocutory in character and appeal was made without the trial court's consent.

B. *Hiroshi Toguchi v. Kaiser Foundation Hospitals And Kaiser Foundation Health Plan, Inc., and Maurice L. Silver, M.D.*; circuit court, first circuit; Civil No. 13982.

On March 24, 1964, plaintiff Toguchi filed a complaint against the defendants. Plaintiff charged defendants for negligence in the treatment and care of plaintiff. In addition, both of the Kaiser foundations were charged for breach of contract and breach of implied warranty in the hospitalization of plaintiff. The charge against Dr. Silver was an action in tort sounding in malpractice.

The record of the case shows the law firm of Robertson, Castle and Anthony, through Thomas M. Waddoups, as counsel for all defendants (the Kaiser foundations and Dr. Silver). All of defendants' documents, including stipulation extending time to answer, answer, answer to amended complaint, and defendants' pretrial statement, were prepared and signed by Mr. Waddoups of the law firm.

A yellow sheet clerk's minutes, dated Monday, April 8, 1968, shows the following:

PRE-TRIAL AND/OR SETTLEMENT CONFERENCE

Case called in chambers. The record will show the presence of counsel.

Representations by Mr. Waddoups, counsel indicating also an oral stipulation with Mr. Oyama with respect to one of the defendants named in the action, i.e., Dr. Maurice Silver, who at the time of the incident was an employee, an agent of Kaiser Hospital; that recently, counsel was defending the hospital interests in a suit against the hospital by the same doctor; that counsel goes on record to state that for the case at hand he has never personally interviewed Dr. Silver; that he has instructions from the Hospital that they will assume all responsibilities for Dr. Silver as an employee of the institution during the incident. Confirmed by Mr. Oyama that stipulation was entered into prior to the conference, and that an amended statement will be filed incorporating the stipulation.

Mr. Waddoups suggested that the pre-trial order include these matters rather than filing an amended complaint and further requested that the caption of the case be amended to eliminate the name of Dr. Silver from the case as a defendant and that a discontinuance as to Dr. Silver be entered on the record at this time. No objection by Mr. Oyama. So ordered by the Court that the pre-trial order incorporate the stipulation, including the statement that at the time of the incident Dr. Silver was an employee, an agent, of the Kaiser Foundation Hospital, and that the caption of the case be amended to drop Dr. Silver's name as a defendant. * * *

However, a stipulation for dismissal with prejudice, which was filed on May 28, 1968, was signed for all the defendants by Mr. Waddoups of the law firm.

C. *Maurice L. Silver M.D., v. Castle Memorial Hospital, et al.;* circuit court, first circuit; Civil No. 24189.

Complaint was filed on February 2, 1968, the same day that plaintiff filed his complaint against the Queen's Hospital, et al.

Trial before Judge Tom Okino commenced approximately on October 7, 1969. After over five months of litigation, the trial concluded in a directed verdict for the defendants. Plaintiff, on May 12, 1970, filed a notice of appeal. Plaintiff appealed on constitutional deprivation and on anti-trust issues.

At the trial level plaintiff did not at any time try to disqualify the law firm of Anthony, Waddoups, Hoddick and Brown as counsel for defendants.

On appeal, the appellant for the first time, on May 28, 1971, filed this motion which is now before this court to disqualify the law firm of Anthony, Waddoups, Hoddick and Brown as counsel for defendants-appellees.

For this motion the grounds now alleged by the appellant in an affidavit dated May 7, 1971, to disqualify the law firm are:

(a) That the law firm represented appellant as appellant's attorney in a suit entitled "Toguchi *v.* Kaiser Foundation Hospital and Kaiser Foundation Health Plan, Inc., both California corporations; and Maurice L. Silver, M.D."; Civil No. 13982;

(b) That attorney Burnham H. Greeley interviewed appellant personally, reviewed appellant's file and confidential communications; that Greeley, unknown to appellant, turned over all such confidential communications and personal information to attorney Thomas M. Waddoups; that attorney Waddoups entered an appearance, in Civil No. 13982, by way of answer on behalf of appellant;

(c) That appellant did not know that a t t o r n e y Greeley was the partner or assistant to Mr. Waddoups of the law firm of Anthony, Waddoups, Hoddick and Brown;

(d) That in *Toguchi, supra,* appellant was betrayed by the law firm of Anthony, Waddoups, Hoddick and Brown; that, in secret and without notice, appellant was considered by the law firm as an employee or agent of Kaiser Hospital and was negligent, whereas, in truth, there was no negligence; that the claim in *Toguchi, supra,* is believed to have been settled for a small sum; and that the law firm has never returned appellant's papers or file;

(e) That the law firm and its partners now pretend they acquired evidence of some kind of bad conduct about appellant while they were appellant's lawyers and they falsely and fraudulently pretend to have a superior knowledge to which they allude, all to appellant's detriment;

(f) That in 1966 and 1967, while Mr. Waddoups was appellant's attorney of record in Civil No. 13982, his partner, Mr. Dennis E. W. O'Connor, became the legal adviser and lawyer for defendant Castle Memorial Hospital and worked against appellant in an effort to deprive ap-

pellant of privileges at the hospital;

(g) That the law firm of Anthony, Waddoups, Hoddick and Brown, as lead attorneys, through attorney O'Connor, has control over the appellees in this case (Silver *v.* Castle Memorial Hospital, et al.) and such position is a violation of the Canons of Professional Ethics and a fraud upon appellant, an abuse of professional confidence and a patent conflict of interest that has degraded the administration of justice and made a mockery of the law.

## II. ISSUES

The allegations of the appellant and the denial of the law firm raises the following questions:

1. Was there an attorney-client relationship established between the law firm and appellant in *Toguchi v. Kaiser Foundation Hospitals, supra?*

2. Is there any merit to appellant's charges against the law firm, especially the charge that the law firm had received appellant's confidential communications and personal information and did misuse such communications and information to the detriment of the appellant?

3. Did appellant file the instant motion to disqualify the law firm in a timely fashion?

## III. CONCLUSION

In reference to question No. 1 the record of the *Toguchi* case, *supra,* makes it so crystal-clear that an attorney-client relationship existed between the appellant and the law firm that no further comment is necessary. The fact that the law firm represented two of the defendants in the *Toguchi* case, *supra,* with possible divergent interests, is not a valid issue in this case. Proper objection to such a dual representation should have been made by appellant at the inception of the *Toguchi* case, *supra.*

In reference to questions No. 2 and No. 3 the substance and timing of appellant's affidavit and motion before this court are open to challenge. Appellant has had ample time

and opportunity to raise his present objections earlier. In *Silver v. Queen's Hospital, supra,* the appellant was given a full-blown hearing to attempt to disqualify the law firm and failed, though the grounds alleged by appellant were of a different nature. Appellant further had other opportunities. to file another motion to disqualify the law firm in *Silver v. Castle Memorial Hospital, supra,* before causing all the parties, including the trial court, to expend the time and money in a protracted litigation on the merits of the case.

For appellant to intimate that now is the first time he became aware of attorney Greeley's previous relationship to the law firm leaves this court in a state of incredulity. Appellant fails to state when and under what circumstances he first became aware of attorney Greeley's relationship to the law firm.

The testimony and affidavit of appellant in *Silver v. Queen's Hospital, supra,* show clearly that as early as 1963 appellant knew of and sought the services of attorney Waddoups and attorney Anthony. Appellant also knew that both attorneys were members of the law firm of Robertson, Castle and Anthony, the predecessor of the law firm of Anthony, Waddoups, Hoddick and Brown.

The record in *Toguchi v. Kaiser Foundation Hospitals, supra,* shows that Waddoups, Esquire, as a partner of the law firm of Robertson, Castle and Anthony, acted as counsel for appellant from the inception of the case in March, 1964, until the dismissal of the case in May, 1968. Though the yellow-sheet clerk's minutes dated April 8, 1968, show an entry stating that attorney Waddoups "goes on record to state that for the case at hand he has never personally interviewed Dr. Silver", it is implausible that for four long years (1964 to 1968) appellant never queried attorney Greeley in regard to the status of the case or as to what attorney Greeley was doing on appellant's behalf. It is also inconceivable that appellant in the course of the said four years never found out or never had cause to realize that attorney Waddoups was acting as appellant's counsel in the *Toguchi*

case, *supra.* The record shows that, at the least, appellant should have found out or had cause to find out that attorney Waddoups was his counsel and that attorney Greeley was then associated with attorney Waddoups, as members of or employees of the law firm of Robertson, Castle and Anthony.

The seemingly pertinent allegations of appellant in his latest affidavit are basically premised on the conjecture of appellant. For example, appellant stated that attorney Greeley, after interviewing appellant and reviewing appellant's confidential communications and personal information regarding appellant's treatment of his p a t i e n t (Toguchi), unknown to appellant, "turned all such confidential communications and personal information over to attorney Waddoups". Here, appellant fails to clear the contradiction inherent in the statement. If it were unknown to appellant, how and when did he ever learn that such turning over of the confidential communications did occur? Appellant also fails to specify what confidential communications and personal information are involved.

Appellant further states in his affidavit that he was "betrayed by the law firm" and that "the law firm and its partners now pretend they acquired evidence of some kind of bad conduct about appellant while they were appellant's lawyers and they falsely and fraudulently pretend to have a superior knowledge to which they allude, all to appellant's detriment". Here, the substance of appellant's move to disqualify the law firm is that the law firm *pretends* that it acquired evidence of *some* kind of bad conduct about appellant; that the law firm *falsely and fraudulently pretends* to have a superior knowledge to which it *alludes* (emphasis added). Essential specificity is lacking in appellant's statements.

To further confuse the charges made by appellant against the law firm, appellant's attorney, Mr. Joseph Ryan, *inter alia,* states in his memorandum of points and authorities in support of his motion to disqualify the law firm, the following:

On March 6 and 7, 1968 all as appears in the official transcript of the proceedings before Honorable Thomas S. Ogata, Attorney Thomas Waddoups and Attorney J. Garner Anthony represented by their partner Attorney Dennis E. W. O'Connor fraudulently and deceitfully represented to the Circuit Court of the First Circuit, State of Hawaii, that neither their law firm nor any of them represented Maurice L. Silver, M.D., as his lawyer or lawyers. * * *

At that very time, all as appears in * * * HIROSHI TO-GUCHI *vs.* KAISER FOUNDATION HOSPITALS . . . and MAURICE L. SILVER, M.D., said lawyers and law firm were the Attorneys * * * for Maurice L. Silver, M.D. * * *.

The misleading part of the above statement is that the issue before Judge Ogata in the *Silver v. Queen's Hospital* case, *supra,* was whether attorney Waddoups and/or attorney Anthony served as attorneys for appellant in appellant's efforts to be allowed to practice his profession at Queen's Hospital. The issue was not whether attorneys Waddoups and/or Anthony or their law firm acted as counsel for appellant in the *Toguchi v. Kaiser Foundation Hospitals* case, *supra.*

Such intermingling of facts certainly does not help the cause of the appellant.

We are of the opinion that appellant's charges against the law firm are without merit and we do not reach the question of whether appellant is guilty of laches and is estopped from seeking the disqualification of the law firm to serve as counsel for appellees.

Motion denied.

*Joseph A. Ryan* (*Ryan & Ryan* of counsel) for plaintiff-appellant, for the motion.

*Dennis E. W. O'Connor* (*Anthony, Waddoups, Hoddick & Brown* of counsel) for defendant-appellee Castle Memorial Hospital, contra.

DISSENTING OPINION OF LEVINSON, J.

I dissent.

On the basis of conflicting affidavits filed in this court on behalf of and in opposition to the motion, the majority of the court has decided against the credibility of the movant. I do not think that the record before us justifies such a decision. The facts are disputed. I believe that an evidentiary hearing, where the witnesses would be subject to cross-examination, is required to find the truth. I am not satisfied that the summary manner in which the court disposes of the motion, despite the length of the majority opinion, finds the truth. I think we should appoint a circuit court judge as master to conduct such a hearing and to report his findings to us. We would then be able to decide the matter without the haunting doubts that now plague me.