CALVIN C. F. LAU, Plaintiff-Appellee, *v.* VALU-
BILT HOMES, LTD., URBAN DEVELOPMENT
COMPANY, LIMITED and KAZUYOSHI K.
NOBUTA also known as KENNETH NOBUTA and
RICHARD K. HO, PROJECT COORDINATOR'S
OFFICE, INC., Defendants-Appellants

NO. 5722

JUNE 30, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR and KIDWELL, JJ.

284

OPINION OF THE COURT BY OGATA, J.

Defendants-appellants, Valu-Bilt Homes, Ltd., Urban Development Co., Limited, Kazuyoshi K. Nobuta, Richard K. Ho, and Project Coordinator's Office, Inc.[1] (hereinafter referred to as appellants), appeal from the final judgment entered in the court below on April 5, 1974, on a jury verdict for $89,903.00 in favor of plaintiff-appellee, Calvin C. F. Lau (hereinafter referred to as appellee). The amended complaint consisted of two causes of action: (1) for contributions for advances made by appellee to a joint venture and (2) for breach of a joint venture agreement.

---

[1] Project Coordinator's Office, Inc., became a party-appellant in this litigation which was commenced on January 15, 1973, when the lower court authorized the complaint to be amended on May 4, 1973.

Basically, appellants contend before us that the trial court a) erred in allowing appellee to pursue his claim set forth in his first cause of action before the jury in the absence of an accounting of the joint venture and the striking of a balance; b) erred in denying appellants' motion to disqualify appellee's counsel from representing appellee in the present case; c) erred in denying appellants' motion to dismiss appellant Project Coordinator's Office, Inc. (hereinafter PCO), as a party-defendant and in instructing the jury on the doctrine of partnership by estoppel in connection with the liability of PCO in the joint venture; d) erred in refusing to instruct the jury as to the statute of limitations with regard to appellee's first cause of action; e) erred in allowing parol evidence to contradict and vary the complete and unambiguous written terms of agreements between appellee and third-parties; and f) abused its discretion in awarding attorney's fees to appellee's attorney, based upon 25 percent of appellee's recovery.

On October 12, 1964, appellants, other than appellant PCO, and appellee entered into a letter agreement to form a joint venture to acquire, improve, develop and market 55 residential lots in the Hawaii Kai Maunalua Triangle Bay View Area in Honolulu. Pursuant to the letter agreement, appellee entered into a separate agreement with Kaiser-Hawaii Kai Development Co. on October 13, 1964, to purchase the 55 house lots for development purposes. Thereafter, the letter agreement was replaced by a formal agreement dated October 14, 1964.

The formal agreement provided, *inter-alia:* that appellants Nobuta, Valu-Bilt Homes Ltd., and Urban Development Co., Limited, would control a 70% interest of the venture and appellee would control a 30% interest; that appellee as trustee would hold appellants' interests and rights to secure the Hawaii Kai lots in trust; that appellee would represent all of the parties in the management and control of the project which would be shared by all of the parties; that appellee should obtain the written majority decision of the parties before the project was committed toward any course of action; that in his negotiations with others the appellee would

not disclose in any manner the interests and participation of the appellants; that commissions to the parties would be based upon 35 lots of the project; that 20 lots of the project would be transferred to a Hin Chiu Lau or such others as specified by the appellants with the 20 lots not being subject to the agreement; that the life of the agreement would continue for the term of the project unless otherwise mutually amended or terminated by the parties; that losses of the project would be shared by each party according to the percentage interests mentioned earlier; that in the event any party causes any other party or parties to pay for his share of loss, the other party or parties would have the right of contribution from the person failing to pay his percentage share of loss; that if suit is brought to enforce contribution, the defaulting party would pay all costs and expenses, including reasonable attorney's fees; and that appellant Ho, in consideration of this agreement and to induce others to execute this agreement, would personally guarantee the performance by appellants Valu-Bilt Homes, Ltd., and Urban Development Co., Limited, under the terms of this agreement.

Absent from the agreement, however, was the mode of financing for the project. All parties agree that the financial situation of the project was never sound and that the joint venture floundered from its inception. Evidence offered at trial indicates that the appellants, other than appellant PCO, and appellee had orally agreed that the latter was to raise the financing for the project. The evidence further indicates that this unstable predicament contributed greatly to Kaiser-Hawaii Kai Development Co.'s subsequent cancellation of the sales contract with appellee for purchase of the 55 residential lots by the joint venture sometime in April of 1965.

Thereafter, the joint venture managed to salvage 15 out of the original 55 lots purchased from Kaiser-Hawaii Kai and proceeded with the development of the reduced number of lots. In June of 1966, appellee, as trustee and in behalf of the joint venture, sued Kaiser-Hawaii Kai Development Co. for wrongful cancellation of the sales contract. The suit was tried in 1968, and appellee prevailed. He was awarded a judgment in that case which he later compromised in 1969, without the

consultation of the appellants.

It was alleged in the amended complaint that appellee on several occasions requested appellants to contribute funds for the continued operation of the project but that appellants did not comply with appellee's demand. To this, appellants claimed that they would have contributed funds to the project had appellee first given them an accounting as requested.

On March 28, 1968, appellants' attorney wrote appellee a letter informing him of appellants' withdrawal from the joint venture because of appellee's repeated failure to render an accounting of the joint venture which appellants alleged constituted a breach of trust on the part of the appellee. However, appellee continued the operation of the project until 1973, allegedly sustaining a substantial loss.

On January 15, 1973, appellee filed this action against appellants[2] to recover contribution for advances made to the joint venture and for damages for breach of the joint venture agreement, requesting a jury trial on all issues. Appellants[3] filed their answer and a counterclaim. Appellee replied to the counterclaim and, subsequently, leave having been granted, filed an amended complaint to include appellant PCO as a defendant to the original action. An answer to the amended complaint was filed by appellants who defended on the ground that an accounting was not given. Appellants also filed a counterclaim[4] which included a claim for an accounting.

On March 4, 1974, the jury trial was then commenced. The trial took nearly three weeks to complete and at the conclusion thereof, the jury returned a verdict for appellee in

---

[2] Other than appellant PCO.

[3] Other than appellant PCO.

[4] Appellants' counterclaim consisted of: first counterclaim, a damage claim against appellee for $200,000; second counterclaim, a claim against appellee for $100,000 for punitive and exemplary damages; third counterclaim, a claim for an accounting; fourth counterclaim, claims for contribution for advances made to the joint venture; fifth counterclaim, a claim for a pro rata share of the amount awarded appellee in his suit against Kaiser-Hawaii Kai Development Co.; and sixth counterclaim, a claim for reimbursement of a loan made to appellee.

the amount of $89,903.00 for contributions for advances made by appellee and a verdict against appellants' counterclaim.

## I.

Appellants' first contention is that a joint venturer cannot sue another joint venturer at law to recover contributions for advances made by the former to the joint venture before there has been an accounting and a balance struck. Preliminarily, appellee has raised the question of whether this issue was properly preserved by appellant for appeal. The question of the necessity for an accounting was initially raised in the pleadings by appellants. In their answer to the amended complaint, the appellants interposed the defense of the absence of an accounting by appellee to appellants. And, further in their third counterclaim, appellants requested the court for an accounting by appellee. Moreover, at the close of appellee's case, appellants moved for a directed verdict at which time they asserted the absence of an accounting as a defense to the action by appellee for contribution for advances made to the joint venture; and that without such an accounting the action should be dismissed. *Danelian v. McLoney*, 124 Cal.App.2d 435, 268 P.2d 775 (1954). Appellants' motion was denied. We believe that the accounting question was squarely raised and preserved for this appeal in the disposition of appellants' motion for directed verdict. Certainly, this question was before the trial court from the inception of this litigation, *see State v. Hale*, 45 Haw. 269, 279, 367 P.2d 81, 87 (1961), and this is not a case where the lower court did not have any opportunity to pass on this issue.[5] *Miller v. Leadership Housing Systems, Inc.*, 57 Haw.

---

[5] The parties have conceded on appeal that a request for an equitable accounting was made by the appellants before trial which was denied. And while no record of the pre-trial conference was preserved, the trial court did recognize on the record that such a request was in fact made. At the hearing on the motion for judgment notwithstanding the verdict the court commented:

THE COURT: Didn't you make any such motion to have a separate hearing on the accounting? You didn't bring anything up until the pre-trial conference.

321, 555 P.2d 864 (1976); *see* HRS § 641-2 (1976). In view of what we have said we consider this issue viable on this appeal.

There is no dispute that a joint venture was created in 1964 between appellee and appellants, Nobuta, Valu-Bilt Homes, Ltd., and Urban Development Co., Limited, with appellant Ho as guarantor. We have said that "a joint venture is closely akin to a partnership, and the rules governing the creation and existence of partnerships are generally applicable to joint ventures." *Shinn v. Edwin Yee, Ltd.*, 57 Haw. 215, 217-218, 553 P.2d 733, 736 (1976); *Kienitz v. Sager*, 40 Haw. 1 (1953). There have been recognized, however, several traditional differences between a joint venture and a partnership. One of the outstanding differences is that a partnership is ordinarily formed for the transaction of a general business of a particular kind while a joint venture is usually, but not necessarily, limited to a single transaction. 2 R. Rowley, *Partnership* § 52.14 (2d ed. 1960); *see* J. Crane & A. Bromberg, *Partnership* § 35 (1968); 1 J. Barrett & E. Seago,

---

MR MAH: Yes, that's the way the statement of record is, yes. That's when I came into the picture.

The question of the appellants' right to an equitable accounting raised by their third counterclaim was necessarily concluded by the denial of their motion for directed verdict at the close of the appellee's case and by the court's refusal of their accounting instructions at the close of the evidence, as well as by the denial of their motion for judgment notwithstanding the verdict. Granted, the appellants could have been more precise in stating their position, which they did at pretrial, but "[t]echnical precision is not necessary in stating grounds for the motion so long as the trial court is aware of the movant's position." *United States v. Fenix and Scisson, Inc.*, 360 F.2d 260, 266 (10th Cir. 1966), *cert. denied*, 386 U.S. 1036 (1967); *see generally*, Wright & Miller, Federal Practice & Procedure: Civil § 2537. "The guiding light of this court is the promotion of justice rather than adherence to technicalities which, because of the omissions of counsel, cast an unfavorable light on an otherwise meritorious case." *Low v. Honolulu Rapid Transit Co.*, 50 Haw. 582, 585, 445 P.2d 372, 375-376 (1968). In their motion for judgment notwithstanding the verdict, the appellants did state their position correctly:

"Equity will take jurisdiction once it is alleged there is a fiduciary relationship or that the accounts are complicated. The Court has stated continuously that it was confused and didn't comprehend the accounts, which strongly indicated why equity should assume jurisdiction. Therefore, since the Court has both equity and law jurisdiction, it should grant the Defendants' request for the accounting trial, as stated in their counterclaim, . . . ."

*Partners and Partnerships,* ch. 2, § 7 (Supp. 1965); 48 C.J.S. *Joint Adventures* § 1(b)(6) (1947).

We have recognized in this jurisdiction the general rule that ordinarily "an action at law will not lie in favor of a partner against another partner upon a demand growing out of a partnership transaction until there has been a settlement of accounts and a balance struck," *Holmes v. Mello,* 15 Haw. 72, 73 (1903); *Harrison v. Magoon,* 13 Haw. 339 (1901); *Fernandez v. Camara,* 12 Haw. 183 (1899). It has been said in other jurisdictions that another generally recognized apparent difference between partnerships and joint ventures is that a joint venturer has the right to bring an action at law for damages for breach of the contract of joint venture, for a share of the profits of the joint venture, for losses of the joint venture, or for contribution for advances made thereto, if the amount sued for is capable of computation and ascertainment by a jury without a full accounting, while a partner has no such corresponding right. *See Jolin v. Oster,* 55 Wis.2d 199, 198 N.W.2d 639 (1972); *McCulloh v. Doyle,* 40 N.M. 126, 55 P.2d 739 (1936); *Wertzberger v. McJunkin,* 171 Okla. 528, 43 P.2d 729 (1935); 48 C.J.S. *Joint Adventures, supra,* § 12(b)(1). In reality, however, a partner may sue another partner at law regarding a partnership transaction where an accounting is unnecessary. *Berwin v. Cable,* 313 Mass. 431, 47 N.E.2d 951 (1943); *McKee v. Capitol Dairies, Inc.,* 164 Or. 1, 99 P.2d 1013 (1940); *see* Mechem, *The Law of Joint Adventures,* 15 Minn. L. Rev. 644 (1931). Further, where a full accounting is required to properly adjust the accounts between joint venturers, the appropriate remedy is in equity for an accounting. *Jolin v. Oster, supra; Johanik v. Des Moines Drug Co.,* 235 Iowa 679, 17 N.W.2d 385 (1945); *Berwin v. Cable, supra; McKee v. Capitol Dairies, Inc., supra; Waldo Lumber Co. v. Metcalf,* 132 Me. 374, 171 A. 395 (1934); *Wright v. Fick,* 275 S.W.2d 607 (Mo.App. 1955); *Cunningham v. De Mordaigle,* 82 Cal.App.2d 620, 186 P.2d 423 (1947). As we have stated, such has been the general rule in partnership. *Holmes v. Mello, supra; Harrison v. Magoon, supra; Fernandez v. Camara, supra.*

These principles, which we announce, are consistent with

Act 17 of the Regular Session Laws of Hawaii 1972, which enacted the Uniform Partnership Act for this jurisdiction.[6] Section 6(1) of this Act which became effective on January 1, 1973, defined a partnership to include a joint venture.[7] Consequently, we hold that the same rules which apply to partnerships would also apply to joint ventures. Under partnership rules, the cause of action relating to contribution should have been tried in equity for an accounting as indicated by this record.

Moreover, these principles are also consistent with the earlier cases decided by this court which held that actions for accounting are within the concurrent jurisdiction of law and equity. *Colburn v. Kapiolani Estate, Ltd.,* 24 Haw. 706 (1919); *Kaleikini v. Waterhouse,* 19 Haw. 359 (1909). We have indicated in *Colburn v. Kapiolani Estate, Ltd., supra,* that where in such accounting action the accounts cannot be conveniently and properly adjusted and settled, it does not furnish an adequate and complete remedy at law. It was further stated in that case at p. 709:

> In order that a court of equity may assume jurisdiction on the ground of complexity of accounts, it is not essential that the accounts should be mutual, that is, consist of items on both sides, provided that they have become so complicated as to embarrass the remedy at law. This rule is applied where the account is made up of many items for and against each party, or the items are numerous and extend over a long period of time.

We pause here to note that we have abolished courts of equity and courts of law in this jurisdiction and merged them into one "court" which has cognizance over all civil matters. Further, there now is no distinction between the forms of action previously cognizable in courts of law or in courts of

---

[6] See HRS ch. 425, part IV, Uniform Partnership Act (1976).

[7] Section 6(1) of Act 17 of the Regular Session Laws of Hawaii 1972, reads as follows:

SECTION 6. *Partnership defined.* (1) A partnership is an association (including a joint venture) of two or more persons to carry on as co-owners a business for profit.

equity. With the adoption of the HRCP, there is now but one form of action called the "civil action." HRCP Rule 2. These developments in the civil procedure of our courts, however, do not eliminate the substantive principles which differentiate actions of an equitable nature from those that are legal in nature.

We turn now to the application of the principles enunciated earlier. Our analysis of the record convinces us that this controversy, founded on contributions for advances made to the joint venture, is complex and one that obviously requires an accounting. The record clearly demonstrates that ' the amount which appellee sought to recover for contributions for advances made to the joint venture was not accurately ascertainable by a jury. Appellee in his amended complaint prayed for $136,000.00 for contributions for advances made and debts incurred[8] and $150,000.00 in damages for breach of contract.[9] In preliminary proceedings held before trial, it was indicated that numerous documents and accounts were to be introduced into evidence to prove these amounts. A review of the record before the lower court at the pre-trial level also indicates that many of the accounts were not complete or closed, and also that appellee, as trustee and manager of the joint venture, had not wound up the joint venture affairs.

The record further discloses that at the trial level appellee's counsel did not know what the true amount claimed would be until the day before trial. Moreover, appellee's counsel stated that appellee, entrusted with managing and handling the property and accounts of the joint venture, had admittedly lost some of the books, and would not submit any evidence pertaining to those missing accounts. In

---

[8] This claim is specified as the first cause of action in the amended complaint. The final judgment appealed in this case by appellants was based on a jury verdict for $89,903.00 on this cause of action.

[9] This claim is designated as the second cause of action and is predicated upon damages resulting to appellee upon appellants' willful failure to perform joint venture agreement. It was dismissed by the court after the close of all the evidence upon appellants' motion for directed verdict.

addition, appellee's expert witness, a certified public accountant, testified that either of two figures, $105,819.64 or $108,433.04, reflected the balance of net advancements made by appellee. To further confuse matters, the expert witness testified that the audit which he took of the books in arriving at the figures submitted to the jury was incomplete and unverified.

Appellee also testified that he used part of his own separate funds to pay certain expenses of the project. He further testified that he did not keep a separate account as to those funds and that among the numerous checking accounts he used, there also was used a joint checking account with his wife. Most disturbing, however, is the fact that the jury rendered a verdict in favor of appellee on his claim for contribution in the amount of $89,903.00. There appears to be no basis whatsoever from which the jury could have arrived at this figure. Even had the jury found that the higher figure of $108,433.04 offered by the expert witness was the true amount of appellee's net advancement, it then should have arrived at a verdict of not more than $75,903.13.[10] We believe that simple mathematics draws us to the conclusion that the jury's verdict of $89,903.00 is plainly and palpably not supported by the evidence and is erroneous. *Tidwell v. Badgett,* 47 Ala. App. 227, 252 So.2d 649 (1971).

Consequently, we think that appellee's claim for contributions based on his first cause of action involved the unravelling of extensive and complicated accounts which could not be conveniently or accurately investigated and adjusted by a jury. Further, this dispute involves a fiduciary relationship between appellee and the other joint venturers and obviously requires an accounting to settle it.

---

[10] The figures presented to the jury by appellee's expert witness were intended to prove the total advancements for the joint venture made by appellee less any advancements made by appellants. Appellants' rate of contribution toward appellee's net advancements was 70% as per their percentage interest in the joint venture. Thus, appellee's maximum recovery from appellants could only have been 70% of $108,433.04 or $75,903.13.

Therefore, we hold that under this state of the record, that part of the jury's verdict awarding to appellee $89,903.00 must be set aside; the judgment entered in favor of appellee for this amount is vacated. We do find that appellee's first cause of action of the amended complaint sufficiently states a claim for an equitable accounting. In light of this and the trial court's duty to construe the pleadings "as to do substantial justice," HRCP Rules 1 and 8(f), we remand appellee's claim for contributions for further proceedings in equity for an accounting. See *Johanik v. Des Moines Drug Co., supra; Berwin v. Cable, supra; McKee v. Capitol Dairies, Inc., supra; Waldo Lumber Co. v. Metcalf, supra; Wright v. Fick, supra; Cunningham v. De Mordaigle, supra.* The trial court ought to be able upon remand to determine the accounting question from the transcripts and records of the earlier trial proceedings, although it may refer certain aspects of the matter to a master where the court deems such action necessary to the proper resolution of the accounting issue, *see* HRS § 635-14 (1976). In resolving the accounting issue, the court may grant a judgment for the balance found by it to be due. *See generally* 1 Am.Jur.2d *Accounts and Accounting* § 63 (1962).

II

Appellants' next contention is that the trial court erred in denying appellants' motion to disqualify appellee's attorney on the ground that the motion was filed too late.[11] Appellants maintain that a client or former client of an attorney can raise the issue of representation of conflicting interests at any time. We agree with appellants' contention to the extent that there has been actual prejudice to the former client caused by the appearance of counsel for the other side. *See Earl Scheib, Inc. v. Superior Court,* 253 Cal.App. 2d 703, 61 Cal.Rptr. 386 (1967). But, where the former client knew at the outset of the

---

[11] A full hearing on the motion to disqualify appellee's attorney, Ronald Au, from this action was commenced on February 25, 1974.

suit that counsel would be representing the opposing side, and where it is found that the former client is seeking disqualification of counsel to delay the trial, the denial of a late motion to disqualify would be harmless if there is no evidence of actual prejudice to the former client. *See Redd v. Shell Oil Co.*, 518 F.2d 311 (10th Cir. 1975). To hold otherwise would be to unduly penalize the attorney's present client through no fault of his own and to encourage the disruption of courtroom procedure.

The record before us discloses that an attorney-client relationship was created between appellants, Nobuta and Ho, and attorney Au in connection with a previous case involving a related matter to that contested here.

The former case was a suit for damages for breach of contract instituted in the name of appellee against Kaiser-Hawaii Kai Development Co. in 1966. It is undisputed that prior to the commencement of the Kaiser-Hawaii Kai suit, appellee and appellants Nobuta and Ho met the senior partner of the law firm of Chuck and Fujiyama in hopes of retaining the services of that firm. Attorney Au, then an associate with the firm, was referred the matter shortly thereafter. During the initial meeting, it was decided by the parties that attorney Au would handle the case and that he would commence suit against Kaiser-Hawaii Kai with appellee Lau designated as the sole named plaintiff. It was at this initial meeting that an attorney-client relationship was established between attorney Au and appellants, Nobuta and Ho.

There is no evidence, however, of any confidential information which appellants communicated to attorney Au during that initial meeting. It was admitted by appellants that any information communicated to attorney Au by appellants was also within the proper and common knowledge of appellee. Thus, such communications were not confidential and that later use of the contents of the communications would not be prejudicial. *See Estate of Kaufman*, 83 Misc.2d 846, 374 N.Y.S.2d 244 (1973); *Petty v. Superior Court*, 116 Cal.App.2d 20, 253 P.2d 28 (1953).

Further, it was admitted by appellants that they terminated their attorney-client relationship with attorney Au soon

after that initial meeting. Since that initial meeting, no communication within the scope of an attorney-client relationship was had between attorney Au and appellants.

Appellee instituted the instant action against appellants with attorney Au as his counsel of record. Appellants knew that their former attorney, Mr. Au, was representing appellee the instant they were served with a copy of the complaint. Appellants claim that though they knew their former attorney was representing the opposing party, they did not know at the time that they had the right to have attorney Au disqualified. Appellants further argued that it was not until one month before trial when a deposition was taken of appellant Ho that their in-house attorney, Daniel Donegan, first became informed of the prior attorney-client relationship and later advised appellants of their right to object to attorney Au's representation of the appellee. The trial judge, however, found that it was known by both appellants and their counsel at the onset of this litigation or sometime shortly thereafter that attorney Au had represented appellants and was now representing appellee on a related matter. The record also discloses that the motion to disqualify was filed more than one year after the filing of the complaint and less than 48 hours before trial. Also, appellants had appointed their trial attorney, Stanley Mah, only a few days before the scheduled date of trial. These facts together with the trial judge's opportunity to judge the credibility of the witnesses testifying on the motion amounted to competent substantial evidence to sustain the trial judge's additional finding that the appellants were using the motion to delay the trial with the expectation of obtaining additional time for trial preparation.

We are mindful of our pronouncements which have been made in the past in this area of the law. In *Christian v. Waialua Agricultural Co.*, 30 Haw. 533, 559 (1928), we said:

[I]t is the general and well settled rule that an attorney who has acted as such for one side may not render services professionally in the same case to the other side, nor in any event, whether it is in the same case or not, may he assume a position hostile to his client and one inimical to the very interests he was engaged to protect unless he is

expressly authorized so to do; and it makes no difference in this respect whether or not the relation itself has been terminated, for the obligation of fidelity and loyalty still continues.

We also stated in *In re Application of Pioneer Mill Co.*, 33 Haw. 305, 307 (1935):

So scrupulous is the law in protecting the client against possible injury from the apostasy of his counsel that the latter is forbidden from representing adverse interests even after his relation with his client has ceased.

However, in the absence of evidence of actual prejudice, one, who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly in order to reserve it for the most expedient time, may be deemed to have waived that right. *See Redd v. Shell Oil Co., supra; see also Silver v. Castle Memorial Hospital,* 53 Haw. 98, 488 P.2d 142, *reh. denied,* 53 Haw. 131 (1971). While we do not condone unwitting counsel's act of representing an interest adverse to his former clients that places him in a position of conflict or possible conflict of interest, we certainly do not condone the former clients' and their present counsel's act of filing a late motion to disqualify the former counsel for the sole purpose of seeking to disrupt the orderly proceedings of the court. Not only does such conduct cast an even darker shadow over the entire court proceedings, it also greatly inconveniences former counsel's present client. We refuse to be the instrument that would encourage such questionable conduct and consequently refrain from blindly disqualifying former counsel in this case. Under these circumstances, evidence of actual prejudice to the former clients is required in order that former counsel be disqualified. In the absence of such evidence of actual prejudice to appellants, we hold that the trial court did not err in denying appellants' late motion to disqualify appellee's attorney.

III.

It is next urged by appellants that the trial court erred in

not dismissing appellant PCO as a party-defendant to the underlying action. At the close of appellee's case to the jury, appellants moved to dismiss appellant PCO from the case. Appellants argued that appellant PCO was not a party signatory to the joint venture agreement and did not in any manner represent to the appellee that it was acting as a member of the joint venture.

Appellee maintained that appellant PCO did indeed make certain representations that it was a member of the joint venture by paying certain joint venture debts and allowing its name to be used in sales advertisements for joint venture property. Appellee further argued that he relied on these representations to his detriment in that he would not have made further contributions to the floundering joint venture had he not had these assurances that appellant PCO would be able to absorb any possible future losses. Appellee pointed out that appellant PCO was a close corporation owned by appellants, Nobuta and Ho, who also acted as its officers. Thus, appellee argued, appellant PCO should be estopped from denying its liability as a member of the joint venture. At the least, appellee contended, the matter was a factual issue to be determined by the jury. The trial court then, invoking the doctrine of partnership by estoppel, denied appellants' motion to dismiss appellant PCO.

As we stated in part I of this opinion, the rules of partnership are applicable to joint ventures. *See* Act 17, § 6(1), S.L.H. 1972; *see also Joseph v. Donover Co.*, 261 F.2d 812 (9th Cir. 1958). It is generally recognized that the doctrine of estoppel has no application as between actual partners for partners become such by agreement and not by estoppel. 1 J. Barret & E. Seago, *Partners and Partnerships*, ch. 2, § 4.1 (1956); *see Joseph v. Donover Co., supra; Burnett v. Lemon*, 185 Or. 54, 199 P.2d 910 (1948). It has also been said that the question of the effect of holding out as a partner arises only in dealings with third persons, and cannot be raised between the parties themselves, for everyone is presumed to know who are his associates in business. *Guthrie v. Foster*, 256 Ky. 753, 76 S.W.2d 927 (1934); 59 Am.Jur.2d *Partnerships* § 75 (1971). There are exceptions, but none are applicable to this situa-

tion. Here, all appellee need have done to determine who his fellow joint venturers were would have been to look to the joint venture agreement he entered into. Appellant PCO was not a party to the agreement. Further, there is nothing in the record to show appellant PCO became a member of the joint venture by agreement of the parties. *See Kienitz v. Sager, supra*. Accordingly, the trial court erred in refusing to dismiss appellant PCO as a defendant to this action.

## IV.

We have not expressed any opinion on the court's refusal to instruct the jury on the statute of limitations with regard to appellee's cause of action and also on the court's admission of parol evidence to contradict the terms of the written agreements between appellee and third parties to such agreements. Rule 3(b)(5) of this court states in pertinent part:

> When the point involves the admission or rejection of evidence, there shall be included a quotation of the grounds urged at the trial for objection, and the full substance of the evidence admitted or rejected. When the point involves the charge of the court, there shall be set out the specific words of the part referred to, whether it be instructions given or refused, together with the objections urged at the trial.

Here, appellants have failed to comply with the above quoted portion of the rule of this court concerning these two questions. Accordingly, the appeal on these points is dismissed. *Alamida v. Wilson,* 53 Haw. 398, 495 P.2d 585 (1972).

Since a portion of the judgment in this case relating to the first cause of action is being vacated and this matter remanded for further proceedings in equity on the accounting phase, there is no need to discuss and decide the issue of attorney's fees awarded to appellee, except to state that counsel abide by guidelines established by *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 413 P.2d 242, *reh. denied,* 49 Haw. 257, 414 P.2d 82 (1966).

The judgment is vacated in part and this cause is remanded for further proceedings not inconsistent herewith;

that part of the judgment with respect to the damage claims of appellants and appellee is affirmed.[12]

Stanley S. Mah (Sterry, Mah & Gallup of counsel; Daniel A. Donegan of counsel) for Defendants-Appellants.

Ronald G. S. Au (Mark S. Davis with him on the brief; Kelso, Spencer, Snyder & Stirling of counsel) for Plaintiff-Appellee.

CONCURRING AND DISSENTING OPINION OF KIDWELL, J.

While I concur in the conclusions reached in parts II, III and IV of the majority opinion, I disagree with the conclusion in part I and the consequent partial vacation of the judgment. I would modify the judgment by deleting Project Coordinator's Office, Inc. as a defendant and vacating the award of attorney's fees, but otherwise would affirm the judgment.

As I understand part I of the opinion, the majority announces the rule that, in an action between joint venturers, if a complex accounting is required the appropriate procedure is that of an accounting in equity before the court rather than a trial to a jury, although the entire case may be tried to a jury if the accounts of the joint venture are not so complex that the respective obligations of the joint venturers are beyond the capacity of the jury to compute and ascertain. Stated abstractly, the rule seems reasonable and I would accept it, although I have some difficulty in tracing its antecedents. Since the separation of law and equity has been abolished and civil actions take a single form, the rule is clearly not jurisdictional although the constitutional right to a jury trial may be involved in the choice of procedures in a particular case.

---

[12] The damage claim of appellee set forth in the second cause of action and appellants' damage claims set forth in their first and second counterclaims are res judicata. The remaining claims of the appellants as set forth in their fourth, fifth and sixth counterclaims may be considered in the accounting aspect of this case.

Absent the constitutional question, which has not been raised and I do not see as present here, the determination whether the accounts in a particular case are so complex as to be beyond the jury's capabilities seems to be one which is addressed to the sound discretion of the trial court. I read the majority opinion as concluding that this discretion was abused in the present case, and I am unable to agree with that conclusion.

In their answer appellants asserted as a defense, and in their counterclaim they asserted as a ground for damages, that appellee had not provided the accounting to which they were entitled. But even if their answer and counterclaim would otherwise have been sufficient to present the procedural question to the trial court, there was nothing in the pleadings to suggest that the accounts were of the degree of complexity which would call for their removal from the jury's consideration under the rule announced in the majority opinion.

Appellee demanded a jury trial. No objection to proceeding before a jury appears in the record, unless the colloquy referred to in footnote 5 of the majority opinion discloses such an objection. This colloquy occurred at the hearing on the motion for judgment notwithstanding the verdict. Appellant's counsel was then arguing to the trial court that an accounting should have been conducted by the court or a master out of the presence of the jury. The following exchange then occurred:

MR. MAH: No, but the jury is not entitled to have that portion. If this was a question of fact whether this was an accounting, then they may decide that but you have —

THE COURT: Didn't you make any such motion to have a separate hearing on the accounting? You didn't bring anything up until the pre-trial conference.

MR. MAH: Yes, that's the way the statement of record is, yes. That's when I came into the picture.

THE COURT: I'm not blaming you for it. I'm just saying that after a year passes, you can't act like it happened yesterday.

No transcript of the pretrial conference is in the record. The minutes of that proceeding show that appellants were represented by Daniel Donegan and Stanley Mah, and contain, with respect to the subject of an accounting, only the following entry:

> The Court suggested a master in accounts in this case, Mr. Donegan had no objection in using a master, but the expense.

In this state of the record it seems to be entirely speculative whether any motion, much less an adequate one, was made in the pretrial conference for a separate accounting. If a motion of any sort was attempted to be made, it must have been oral and therefore subject to Rule 7(b)(1), H.R.Civ.P.:

> 7(b) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

In *Alger v. Hayes*, 452 F.2d 841 (8th Cir. 1972), the appellant sought to show by affidavit that an objection to jurisdiction of the person had been made by an oral motion to dismiss at an unrecorded pretrial conference. The appellate court refused to assume that an adequate motion had been made.

> Rule 7(b) requires applications for an order to be in writing "unless made during a hearing or trial." The type of "hearing" at which there is no need for reducing a motion to writing is one in which the proceedings are recorded. *Hammond-Knowlton v. Hartford-Connecticut Trust Co.*, 26 F. Supp. 292, 293 (D. Conn. 1939); *Mitchell v. Public Service Coordinated Transport*, 13 F.R.D. 96 (D.N.J. 1952). The rule is explained in *In re J. & M. Doyle Co.*, 130 F.2d 340, 341 (3 Cir. 1942): "If no written motion is filed . . . it is apparent that within a very brief time neither the adverse parties nor the court will be able to tell what took place." Judge Goodrich added in *Raughley v. Pennsylvania R.R.*, 230 F.2d 387, 391 (3 Cir. 1956):

"In the conduct of any organization which has many things to do, some form of system is required lest everything become so botched that the business cannot be done. This applies to the running of an army, a mercantile establishment or a court. We think rule 7(b)(1) is to be taken as meaning what it says."

Clearly the dictates of Rule 7(b) apply in a situation such as this where a party applies under Rule 12(d) for a determination of a pleaded jurisdictional defense in an unrecorded pretrial conference. The effect of noncompliance here is that this court is unable to determine either from the pleadings or the initial proceedings, whether the defense was properly raised. 452 F.2d at 843-44.

Even if the hurdle of Rule 7(b)(1) is surmounted, there is nothing to indicate that the trial court was made acquainted with the complexity of the accounting evidence which was to be submitted to the jury until the evidence was actually received. Without a showing of complexity, the rule which the majority has announced would not have entitled appellants to the withdrawal of the accounting evidence from the jury's consideration. I think it would be asking far too much of the trial court to require it to have observed the evidence as it unfolded and at some point during the trial to have acted sua sponte to terminate the trial and refer the accounts to a master or conduct an accounting proceeding before the court. The question was not adequately presented to the trial court until after the jury verdict. If it was not error for the trial court to have failed to take the accounts from the jury before the verdict, it cannot be error for the trial court to have refused to do so after the verdict. In *Lindeman v. Raynor*, 43 Haw. 299 (1959), where similarly no objection was made to the conduct of the trial before the jury rendered its verdict, we said:

Rule 46 of the Hawaii Rules of Civil Procedure requires a party to make known to the trial court his objections to its actions and the grounds therefor. Actions of the court as to which no objections have been interposed

are not subject to appellate review . . . . Plaintiff saw fit to speculate on the chances of a favorable verdict. Having done so, he must abide by the consequences. 43 Haw. at 301.

Accordingly, I am unable to join in the majority's conclusion that appellant's objection to the trial court's conduct of the proceedings is before us on this appeal. The majority opinion possibly may also be read as premised upon this court's independent consideration of the evidence and its determination that the verdict is so glaringly unsupported by the evidence as to reflect plain error. However, although the motion for a directed verdict was coupled with a motion for a new trial, the ground that the verdict was not supported by the evidence was not asserted before the trial court independently of the claim to an accounting. Neither has insufficiency of the evidence been raised as a point in this appeal. Such omissions would ordinarily preclude consideration of the sufficiency of the evidence by this court. *Miller v. Leadership Housing Systems, Inc.*, 57 Haw. 321, 555 P.2d 864 (1976). Moreover, this court has regularly refused to search the record to determine the sufficiency of evidence to support a finding of fact, and has placed the burden upon the party seeking to overthrow the finding to demonstrate its insufficiency. *Associated Engineers & Contractors v. State*, 58 Haw. 187, 215, 567 P.2d 397, 415 (1977). I see no reason to depart from these salutary rules in this case.